**CARNEY FUNERAL CHAPEL, INC., et al., Appellants,**

**v.**

**SAVINGS OF AMERICA, INC., et al., Respondents.**

**WHELCHEL FUNERAL CHAPEL, LTD., INC., et al., Appellants,**

**v.**

**SAVINGS OF AMERICA, INC., et al., Respondents.**

No. 22011.

Missouri Court of Appeals, Southern District, Division One.

Nov. 5, 1998.

---

John W. Housley, Randall J. Reichard, Glenn P. Green, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for appellants.

Glenn A. Burkart, Burkart & Hunt, P.C., Springfield, for respondent Mercantile Bank of South Central Missouri.

Rodney J. Hoffman, Slagle, Bernard & Gorman, P.C., Kansas City, for respondent Savings of America, F.S.B.

CROW, Judge.

This appeal arises from two lawsuits filed October 18, 1988. Each suit had multiple plaintiffs and multiple defendants. The trial court consolidated the suits some fifteen months after they were filed.

Ultimately (on October 30, 1997), the trial court granted a motion for summary judgment by one defendant on all claims against it by all plaintiffs. This appeal followed.

The intricate issues confronting this court require an introduction of the parties and a summary of the allegations on which the plaintiffs based their claims.

One suit was numbered CV188–2182CC in the trial court. This opinion refers to that suit as "case 2182." This opinion sets forth the pertinent details about case 2182 separately from the details about the other suit.

Three plaintiffs instituted case 2182. They are identified in the first amended petition [1] as: Whelchel Funeral Chapel, Ltd., Inc. ("Whelchel"); Robert Miller, doing business as Cedarvalley Memorial Funeral Home ("Cedarvalley"); and Paul Howell ("Howell"). The first amended petition avers Howell brings the suit "on behalf of himself and as a class representative on behalf of a class of which he is a member."

The first amended petition in case 2182 names five defendants. The first named defendant is Savings of America, Inc. ("SOA").[2]

1. Case 2182 was pending on the plaintiffs' first amended petition at the time the trial court entered the judgment appealed from here.

2. The first amended petition alleges SOA is "a California corporation, authorized to do business in the State of Missouri." SOA's brief identifies SOA as "Savings of America, F.S.B., a federal savings institution." No issue about the discrepancy is raised in this appeal.

The second named defendant is Future Trust, Inc. ("Future Trust"). The third named defendant is R. Deryl Edwards ("Edwards"). The first amended petition avers Future Trust is "presently involved in proceedings under Chapter 11 of the Bankruptcy Code ... and ... Edwards is the acting trustee under said bankruptcy proceedings." The fourth named defendant is Barnett Bank of West Florida ("the Florida bank"). The final named defendant is Mercantile Bank of Table Rock Lake ("Mercantile").[3]

The allegations of the first amended petition in case 2182 pertinent to this appeal are summarized in the ensuing eleven numbered paragraphs.

1. In 1982, Future Trust was in the business of contracting with individuals for prearranged funeral services. An individual (the "Purchaser") who desired to arrange a funeral for himself or another (the "Beneficiary") could sign a contract with Future Trust whereby the Purchaser agreed to pay Future Trust a specified amount in designated installments. In return, Future Trust agreed to provide a funeral service for the Beneficiary when the Beneficiary died. This opinion henceforth refers to such contracts as "the Purchaser contracts."

2. The Purchaser contracts provided, *inter alia:*

"Future Trust shall deposit an amount equal to all sums received from Purchaser, less statutorily authorized fees, into a special account in a bank, savings & loan association or other qualified financial institution, as provided by law, within 120 days after receipt. The current Trustee of the Preneed [sic] Trust into which contract payments shall be deposited is BOATMEN'S UNION NATIONAL BANK of Springfield, Missouri."

3. Future Trust did not own or operate a mortuary. Consequently, in order to provide the funeral service called for in a Purchaser contract, Future Trust would enter into a contract with the operator of a mortuary ("the Funeral Home") whereby the Funeral Home would, for a specified price to be paid by Future Trust, provide the funeral service called for in a Purchaser contract. This opinion henceforth refers to the contracts between Future Trust and a Funeral Home as "the Funeral Home contracts."

4. In 1982, Whelchel entered into a Funeral Home contract with Future Trust. That same year, Cedarvalley also entered into a Funeral Home contract with Future Trust.

5. Howell and other individuals entered into Purchaser contracts with Future Trust and made payments to Future Trust in accordance with those contracts.

6. Pursuant to the contracts referred to in paragraphs 4 and 5, a "bank account" numbered 219–002276–0 was created at SOA in the names of Whelchel, Cedarvalley and Future Trust. Payments received by Future Trust from individuals under Purchaser contracts were deposited in that account, henceforth referred to as "account 2276."

7. On August 15, 1984, SOA issued two checks on account 2276. Each check was payable to Whelchel, Cedarvalley and Future Trust. One check, numbered 219–0027717, was for $5,323.60. The other, numbered 219–0027708, was for $90,000.[4]

8. The drawer of the checks described in paragraph 7 (copies of which appear in the record) was SOA. The drawee was the Florida bank.

9. The two checks, bearing the supposed endorsements of Whelchel, Cedarvalley and

**3.** The record indicates that while this litigation was pending in the trial court, Mercantile's name became Mercantile Bank of South Central Missouri. Mercantile's brief identifies Mercantile by the latter name.

**4.** The first amended petition's allegation that the two checks described in paragraph 7, above, were drawn on account 2276 *is misleading.* It appears from the deposition of Daniel HeiRoni-

mus, an officer of SOA, read in conjunction with documents in the record, that account 2276 was not a checking account, but instead was an interest-bearing account, and that the two checks described in paragraph 7, above, were issued for the purpose of closing the account. Apparently, the $90,000 check was for the principal balance; the $5,323.60 check was for the accrued interest.

Future Trust, were deposited in Mercantile and ultimately paid by the Florida bank.[5]

10. The supposed endorsements of Whelchel and Cedarvalley "were forged and did not contain authorized signatures of either Whelchel ... or ... Cedarvalley."

11. Upon payment of the two checks by the Florida bank, Mercantile "made the funds available to one Robert O. Jones."[6]

The first amended petition in case 2182 comprised five counts. Counts I and II pled alternative theories of recovery against SOA for $95,323.60, plus interest. According to the record, the plaintiffs dismissed their claims against SOA on August 1, 1989.

In Counts III and IV of the first amended petition, the plaintiffs sought recovery of $95,323.60, plus interest, from Mercantile. Count III alleged Mercantile was negligent in that its "forgery detection methods" were deficient and its employees failed to exercise reasonable care "in paying the ... checks over the ... forged endorsements." Count IV averred the checks "did not belong solely to Jones," and that by "exercising dominion over [the checks, Mercantile] converted the checks to its own use and benefit."

Count V of the first amended petition asked the trial court to determine the respective interests of Whelchel, Cedarvalley, Future Trust, and the members of the class represented by Howell in the $95,323.60.

The other suit from which this appeal arises was numbered CV188–2183CC in the trial court. This opinion refers to that suit as "case 2183."

Three plaintiffs instituted case 2183. They are identified in the first amended petition[7] as: Carney Funeral Chapel, Inc. ("Carney"); Craig–Hurtt–Hutsell Funeral Home, Inc., doing business as Craig–Hurtt–Hutsell–Dedmon Funeral Home ("C–H–H–D"); and Winfred June Gaddis ("Gaddis"). The first amended petition avers Gaddis brings the suit "on behalf of herself and as a class representative on behalf of a class of which she is a member."

The title of the first amended petition in case 2183 names only three defendants: SOA, Future Trust, and Edwards. The title identifies Mercantile as only a third-party defendant. However, in two counts of the first amended petition, Mercantile is referred to as "Defendant Mercantile" and, as explained *infra*, those counts seek recovery from Mercantile. Mercantile apparently considered itself a defendant in case 2183, as it filed an answer to the first amended petition.

The allegations of the first amended petition in case 2183 resemble those in case 2182 with the following exceptions.

1. Carney entered into a Funeral Home contract with Future Trust in 1983. C–H–H–D also entered into a Funeral Home contract with Future Trust in 1983. That was the year after the Funeral Home contracts in case 2182.

2. Pursuant to the Funeral Home contracts in case 2183, a "bank account" numbered 219–002275–2 was created at SOA in the names of Carney, C–H–H–D and Future

5. The first amended petition avers the checks described in paragraph 7, above, were "paid" by Mercantile. Mercantile's answer to the first amended petition admits Mercantile "paid" the checks. It appears this is technically incorrect. According to the factual allegations of the first amended petition, Mercantile appears to have been a depositary bank as defined in § 400.4–105(a), RSMo 1986, i.e., the first bank to which the checks were transferred for collection, whereas the Florida bank appears to have been a payor bank as defined in § 400.4–105(b), RSMo 1986, i.e., the bank by which the checks were payable as drawn.

6. Jones, in a deposition taken in 1985, avowed that "if I can remember correctly," the $90,000 check "went into [an account denominated]

R.O.J., Inc.," and the $5,323.60 check went into an account of Future Trust. This court deduces from the record that both accounts were at Mercantile. Dave Lewis, an officer of Mercantile, in a deposition taken in 1992, testified a teller brought the $90,000 check to him when Jones deposited it August 15, 1984. Lewis recalled that because the check was drawn on the Florida bank, Mercantile "put a five-day hold on it." This court infers from Jones's explanation that Mercantile would not allow any part of the $90,000 to be withdrawn from the account into which Jones deposited it until five days elapsed.

7. Case 2183 was pending on the plaintiffs' first amended petition at the time the trial court entered the judgment appealed from here.

Trust. This opinion henceforth refers to that account as "account 2275."

3. On August 15, 1984, SOA issued two checks on account 2275. Each check was payable to Carney, C–H–H–D and Future Trust. One check, numbered 219–0027735, was for $5,323.60. The other, numbered 219–0027726, was for $90,000.[8]

The remaining allegations of the first amended petition in case 2183 regarding the checks mirror the allegations in case 2182.

The first amended petition in case 2183, like the first amended petition in case 2182, comprised five counts. Counts I and II in case 2183, like Counts I and II in case 2182, pled alternative theories of recovery against SOA for $95,323.60, plus interest. According to the record, the plaintiffs dismissed their claims against SOA in case 2183 on August 1, 1989.

In counts III and IV of the first amended petition in case 2183, the plaintiffs sought recovery of $95,323.60, plus interest, from Mercantile. The theories of recovery in those counts are identical to the theories of recovery in case 2182.

Count V of the first amended petition in case 2183 asked the trial court to determine the respective interests of Carney, C–H–H–D, Future Trust, and the members of the class represented by Gaddis in the $95,-323.60.

Mercantile moved for summary judgment in its favor on all claims against it by all plaintiffs in both cases. Mercantile's motion averred that when the four checks were presented to it on August 15, 1984,[9] Lewis (referred to in footnote 6, *supra*) telephoned HeiRonimus (referred to in footnote 4, *supra*) and was told by HeiRonimus that there "would be no problem of the checks' clearing, as the names of the ... funeral homes had been put on the accounts for insurance purposes[10] and that the money belonged to

Future Trust." In support of that averment, Mercantile cited portions of Lewis's deposition.

In response to the above averment, the plaintiffs pled that HeiRonimus testified by deposition that he "had no conversation with Dave Lewis of Mercantile Bank, as to whether the endorsement of the funeral homes would be necessary." In support of that response, the plaintiffs cited a portion of HeiRonimus's deposition.

Mercantile's motion also averred:

"Plaintiffs have admitted that they are unable to trace any monies they have spent for pre-need funeral contracts they had with Future Trust into the accounts upon which the checks were drawn."

The plaintiffs' response to the above averment was:

"Plaintiffs admit they are unable to presently trace the funds in question."

Additionally, Mercantile's motion averred:

"R. Deryl Edwards, Future Trust's trustee in its bankruptcy proceedings, and R. Barnes Whitlock, the certified public accountant employed by said trustee have been and now are unable to trace plaintiffs' funds into the Savings of America accounts upon which the checks were drawn though they had and had access to all of Future Trust's records."

The plaintiffs' response to the above averment was:

"Plaintiffs admit that the Affidavit of R. Barnes Whitlock indicates that he was unable to trace the funds into the Savings of America accounts, but deny that said Affidavit makes any reference to the inability of R. Deryl Edwards to trace said funds, and therefore denies the allegations relating thereto."

While Mercantile's motion for summary judgment was pending, the plaintiffs filed a

---

8. An attentive reader will recognize that the dates and amounts of the checks described in paragraph 3, above, are identical to the dates and amounts of the checks in case 2182. The observations in footnotes 4, 5 and 6 of this opinion, *supra*, regarding the checks in case 2182 apply with equal force to the checks in case 2183.

9. Footnotes 6 and 8, *supra*.

10. This court infers "insurance purposes" meant protection by the Federal Savings and Loan Insurance Corporation.

motion for summary judgment in their favor on all of their claims against Mercantile in both cases. Some time later, the plaintiffs filed an amended motion seeking the same relief.

In response to the plaintiffs' amended motion, Mercantile admitted only that the four checks, when issued by SOA, were delivered to Jones, the president of Future Trust.[11]

With the record in that posture, the trial court granted Mercantile's motion for summary judgment. The trial court's judgment provided, *inter alia:* "[T]hese actions are accordingly dismissed with prejudice to the refiling and reinstatement thereof at cost of plaintiffs."

■ The plaintiffs in both cases, henceforth referred to collectively as "Appellants," bring this appeal from that judgment. Their brief presents two points relied on; however, only the first point pertains to the trial court's granting of Mercantile's motion for summary judgment. The second point avers the trial court erred in denying Appellants' amended motion for summary judgment.

Mercantile moved this court to "strike" Appellants' second point because, in Mercantile's words, "a veritable plethora of decisions of this Court and others" have held a trial court's denial of a motion for summary judgment presents no appealable issue. *Shelter Mutual Insurance Co. v. DeShazo,* 955 S.W.2d 234, 238[3] (Mo.App. S.D.1997); *DeCota v. J.E.M. Development Corp.,* 908 S.W.2d 884, 888[11] (Mo.App. S.D.1995); *Browning v. Salem Memorial District Hospital,* 808 S.W.2d 943, 948[5] (Mo.App. S.D. 1991).

Consistent with those holdings, this court grants Mercantile's motion to strike Appellants' second point. Consequently, this court's task in this appeal is to adjudicate only Appellants' first point. It reads:

"The trial court erred in granting defendant Mercantile Bank's motion for summary judgment because:

(1) said motion does not comply with Rule 74.04(c)(1) in that it does not specifically reference supporting documentation contained in the record; and

(2) the trial court incorrectly ruled plaintiffs are not entitled to maintain their claims against defendant Mercantile Bank in that as payees the funeral homes had ownership of, an interest in or the right to possession of the subject checks, and all plaintiffs had a sufficient interest in the checks by virtue of the bankruptcy order; or alternatively,

(3) defendant Mercantile Bank was not entitled to judgment as a matter of law because material issues of fact exist which preclude the entry of summary judgment in that as named payees on the checks, the funeral homes have an interest in the checks and the bankruptcy order abandoning this claim in favor of the funeral homes and class of individual trust-holders is sufficient to give all plaintiffs an interest in the checks[.]"

There are three components in the above point. This opinion addresses the trio seriatim.

The first component is based on Rule 74.04(c)(1), Missouri Rules of Civil Procedure (1997).[12] It reads, in pertinent part:

"Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts."

Appellants point out that among the twelve numbered paragraphs in Mercantile's motion for summary judgment, there are six—those six are numbered 4 through 9—which make no reference to any pleadings, discovery or affidavits. Instead, those paragraphs refer to documents which, according to Appellants,

11. Footnote 6, *supra.*

12. The version of Rule 74.04 in force when the trial court granted Mercantile's motion for sum-

mary judgment was the version in Missouri Court Rules (West 1997). It took effect January 1, 1994, and remains unchanged.

are "not authenticated, verified or contained in the pleadings of record." Consequently, argue Appellants, the trial court should have denied Mercantile's motion.

In *Brown v. Upjohn Co.*, 655 S.W.2d 758, 759–60 (Mo.App. E.D.1983), the appellate court held a document attached as an exhibit to a motion for summary judgment had no probative value because it was not supported by affidavit or authenticated by verified answers to interrogatories. In *Miller v. Ernst & Young*, 892 S.W.2d 387, 388–89 (Mo.App. E.D.1995), the appellate court held a "bankruptcy examiner's report" filed in support of a motion for summary judgment had no probative value because it was not an affidavit, but only "unadulterated hearsay."

In response to the first component of Appellants' first point, Mercantile makes no contention that the documents referred to in paragraphs 4 through 9 of its motion for summary judgment meet the requirements of Rule 74.04(c)(1). Accordingly, this court infers Mercantile tacitly concedes the documents lack probative value. Nonetheless, Mercantile maintains that the facts alleged in its motion for summary judgment and admitted by Appellants in their response (recounted earlier in this opinion) "clearly defined the issues for the [trial] court."

■ Because some facts were established by Mercantile's motion for summary judgment and Appellants' response thereto, this court declines to hold the trial court should have denied Mercantile's motion on the ground that the documents referred to in paragraphs 4 through 9 thereof failed to meet the requirements of Rule 74.04(c)(1). The first component of Appellants' first point is denied.

However, in addressing the remaining two components of Appellants' first point, this court shall disregard the documents referred to in paragraphs 4 through 9 of Mercantile's motion for summary judgment.

■ As a prelude to considering the second component of Appellants' first point, this court notes that in adjudicating an appeal from a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom judg-

ment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[1] (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of granting the motion initially. *Id.* at [5]. The propriety of summary judgment is purely an issue of law. *Id.* at [6].

■ As explained in *ITT Commercial Finance*, analysis of whether a party is entitled to summary judgment begins by determining whether that party is a "claimant" or a "defending party." *Id.* at 380–81.

Here, Mercantile is a defending party against the claims in Counts III and IV of the first amended petitions. Consequently, the following passage from *ITT Commercial Finance* applies:

> "Where a 'defending party' will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment. Rather, a 'defending party' may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper."

*Id.* at 381[16].

This court has examined Mercantile's answers to Counts III and IV of the first amended petitions in both cases and has espied no affirmative defense. Accordingly, to be entitled to summary judgment on Counts III and IV of the first amended petitions, Mercantile was required to estab-

lish either proposition "1" or proposition "2," set forth in the above-quoted passage.

As this court comprehends Appellants' hypothesis in the second component of their first point, Appellants believe the trial court granted Mercantile's motion for summary judgment because Appellants conceded they are unable to demonstrate that any funds of theirs went into account 2276 (which was closed August 15, 1984, when SOA issued checks numbered 219–0027708 and 219–0027717, described earlier in this opinion) or into account 2275 (which was likewise closed August 15, 1984, when SOA issued checks numbered 219–0027726 and 219–0027735, described earlier in this opinion).

Appellants maintain the trial court was wrong in granting Mercantile's motion on that ground. Appellants assert: "[T]here is no such tracing requirement under Missouri law or any other law in order for [Appellants] to maintain an action against Mercantile Bank for conversion." The second component of Appellants' first point, quoted earlier, declares: "[A]s payees the funeral homes had ownership of, an interest in or the right to possession of the subject checks." According to Appellants: "Missouri law has consistently held a bank liable for conversion of a check when paying a check on a forged endorsement."

In support of their position, Appellants cite *Hoppe v. First Midwest Bank of Poplar Bluff*, 899 S.W.2d 879 (Mo.App. S.D.1995), a case factually similar to the instant case in some—but not all—respects.

In *Hoppe*, a client engaged a lawyer to collect a debt. *Id.* at 881. The lawyer eventually asked the client whether she would accept $12,000 in settlement. *Id.* The client agreed. *Id.* The lawyer received a $12,000 check payable to him and the client. *Id.* The check was drawn on First Midwest Bank

("Midwest"). *Id.* The lawyer deposited the check in his personal account at First Missouri State Bank ("Missouri"). *Id.* Missouri endorsed the check: "Pay any bank. PEG." [13] *Id.* The check was ultimately paid by Midwest. *Id.* The client never received anything from the lawyer. *Id.*

The client sued the lawyer, Missouri and Midwest. *Id.* The trial court entered judgment for the client against the lawyer for $12,000.[14] The trial court also entered judgment for the client against each bank, but only in the amount of $8,000 (against each).

The client appealed, maintaining, *inter alia*, that the trial court should have awarded her $12,000 against each bank (with the proviso that she was entitled to recover only $12,000 in the aggregate). *Id.* at 882. This court held the client's claims against the banks were based on conversion. *Id.* The opinion noted that § 400.3–419, RSMo 1986, provided:

"(1) An instrument is converted when

. . .

(c) it is paid on a forged endorsement."

899 S.W.2d at 882. The opinion continued:

"The only justification for not holding … Midwest and … Missouri liable for the face amount of the check would be that one of the joint payees [the lawyer], was entitled to, and did receive, part of the proceeds from the check. It could be argued, under that scenario, that the banks' liability to [the client] should be limited to the part of the proceeds she was to receive—an amount less than the face amount of the check.

… In this case, the trial court, by awarding [the client] damages against [the lawyer] for the face amount of the check, concluded that [the lawyer] was not entitled to a fee. No disputed claim between

13. Inferably, "Prior Endorsements Guaranteed." *Pacific Metals Co. v. Tracy–Collins Bank and Trust Co.*, 21 Utah 2d 400, 446 P.2d 303, 306[11] (1968).

14. This court's opinion in *Hoppe* observed that although the lawyer testified his fee arrangement called for him to receive one-third of the recovery, the trial court evidently held the lawyer was entitled to none of the $12,000. 899 S.W.2d at

882. The trial court may have reasoned that inasmuch as the client agreed to settle for $12,000, the client understood she was to receive that sum, unreduced by attorney fees. The trial court may also have reasoned that the lawyer's conduct forfeited his fee. *Id.* at 883 n. 4. In addition to the $12,000 award, the trial court granted client other relief against the lawyer. *Id.* at 881. The lawyer did not appeal. *Id.* at 880–81.

joint payees remained. The banks were not entitled to setoffs.

The trial court erred in assessing [the client's] damages against the two banks for less than the face amount of the check." *Id.* at 883 (footnote omitted).

While that holding may superficially appear to support Appellants in the instant case, further analysis reveals otherwise.

It is obvious that although the lawyer in *Hoppe* was a joint payee on the check, this court held he was entitled to none of the proceeds, otherwise the banks would have been entitled to an offset against the client for the amount to which the lawyer was entitled. Said another way, had the lawyer been entitled to any of the $12,000, the client would have been entitled to recover from the banks only such part of the $12,000 as she should have received from the lawyer. The client was not entitled to recover more from the banks than she should have received from the lawyer.

■ It is thus clear from *Hoppe* that a joint payee on a check is not automatically entitled to recover the full amount of the check from a bank which accepts or pays the check on the forged endorsement of such payee. Instead, the payee is entitled to recover from the bank the amount he or she should have received from the proceeds of the check. To hold otherwise would give a joint payee whose endorsement is forged by another joint payee a right to recover more from the bank than from the forger.

Furthermore, there were three payees on each of the four checks in the instant case. The endorsements of two payees on each check were forged by the president of the third payee. To allow each of the innocent payees to recover the full amount of each check from Mercantile would expose Mercantile to liability in these suits in an amount double the amount of each check. Appellants cite no case supporting such a proposition.

Indeed, Appellants appear to recognize that such a proposition would be untenable. Count V of the first amended petition in each case prays the trial court to determine the respective interests of the funeral homes and the members of the class in the sums of money represented by the checks. If each payee whose endorsement was forged was entitled to recover the full amount of the check from Mercantile, there would be no reason to determine the respective interests of the various Appellants.

■ Accordingly, this court concludes that in order for any Appellant to recover from Mercantile, such Appellant would have to establish the amount he, she or it should have received from one or more of the checks.

Appellants conceded they could trace none of their funds into account 2276 or account 2275 (the accounts which were closed by issuance of the checks). That concession demonstrates Appellants are unable to prove they had any interest in the proceeds of any check. Consequently, this court holds Appellants are barred by the rationale of *Hoppe*, 899 S.W.2d 879, from recovering anything from Mercantile.

The second component of Appellants' first point presents another contention, i.e., "all plaintiffs had a sufficient interest in the checks by virtue of the bankruptcy order."

Neither the point nor the argument following it identifies the "bankruptcy order" to which the point refers. However, in the statement of facts in Appellants' brief, this court finds a reference to two documents which are evidently from the bankruptcy proceeding of Future Trust in the United States Bankruptcy Court for the Western District of Missouri.

One document is an order signed by the Chief Bankruptcy Judge on October 4, 1988. The order recites that the Appellants (referred to as "movants" in the order) moved the Bankruptcy Court "for relief from the automatic stay to bring suit for collection of certain checks which this court, in prior adversary proceedings, determined were not property of the within bankruptcy estate." The order concludes: "It is therefore ... ordered that movants' motion for relief from the automatic stay ... be, and it is hereby, granted."

The other document is a report to the Bankruptcy Court by Future Trust's trustee in bankruptcy. It mentions cases 2182 and 2183, and states that the trustee "believes that the expense of maintaining the bankruptcy estate for the sole purpose of this pending state court litigation is burdensome compared to the potential value of the claim to the estate." The report continues:

> "As a result, the trustee is hereby giving notice pursuant to 11 U.S.C. 554 that the trustee ... intends to abandon the aforementioned claim to and in favor of the aforementioned funeral homes and the trustholders who are plaintiffs in the pending state court litigation."

This court fails to see how either of the documents described above enables any Appellant to maintain a claim against Mercantile.

As reported earlier, the record establishes that Jones was president of Future Trust. Inferably, he was authorized by Future Trust to place its endorsement on checks payable to it. Consequently, Future Trust's endorsements on the checks in dispute were not forged. Hence, as to Future Trust, Mercantile did not accept the checks for deposit on forged endorsements of Future Trust.

■ It may be that Jones deposited some or all of the proceeds into an account other than an account of Future Trust. However, any claim by Future Trust against Jones arising from that conduct would not be based on Jones's forging Future Trust's endorsements, as he did not forge them. It necessarily follows that Future Trust had no claim against Mercantile based on a theory that Mercantile accepted the checks for deposit on forged endorsements of Future Trust.

Therefore, assuming, *without deciding,* that the "bankruptcy orders" assigned to Appellants any claim Future Trust may have had against Mercantile based on the endorsements of Future Trust's name on the checks by Jones, this court holds such orders assigned nothing. The second component of Appellants' first point is denied.

The only contention in the third component of Appellants' first point that is not presented in the second component is the averment that "material issues of fact exist which preclude the entry of summary judgment." However, read in the entire context of the third component, this averment appears to merely restate, in different words, the contentions of the second component. This court denies the third component for the same reasons it denied the second.

■ Judgment affirmed.[15]

PREWITT, P.J., and PARRISH, J., concur.

15. At the time the trial court entered the judgment appealed from here, other claims were pending in cases 2182 and 2183. The trial court did not make an express determination that there was no just reason for delay in adjudicating fewer than all of the claims. *See:* Rule 74.01(b), Missouri Rules of Civil Procedure (1997). Therefore, this court was concerned about whether the judgment was appealable. *See: Allen v. G & J Enterprises,* 856 S.W.2d 347, 348 (Mo.App. S.D. 1993). The unresolved claims consist of a claim by Mercantile against SOA, a claim by SOA against Mercantile, and counterclaims by Mercantile against Whelchel, Cedarvalley, Carney and C–H–H–D. However, it appears that Mercantile's claims seek recovery only if Appellants win on their claims against Mercantile, and that SOA's claim against Mercantile seeks only "such sums that may be adjudged against [SOA]." Inasmuch as the judgment affirmed in this opinion dismisses all of Appellants' remaining claims, it appears to effectively dispose of the other claims identified in this footnote. Consequently, this court finds the judgment appealable.