**NEW PRIME, INC., Appellant,**

v.

**PROFESSIONAL LOGISTICS MANAGEMENT CO., INC., Respondent.**

**No. 23293.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 19, 2000.

---

**2.** The matter of damages not having been raised at the trial court level will not be taken up on appeal.

David L. Wieland, Yates, Mauck, Bohrer, Elliff, Croessmann & Wieland, P.C., Springfield, for appellant.

Bryan O. Wade, Husch & Eppenberger, LLC, Springfield, for respondent.

CROW, Judge.

Plaintiff, New Prime, Inc., a "motor carrier of general commodities," sued Defendant, Professional Logistics Management Co., Inc., for $33,672.89. Plaintiff's petition pled that at Defendant's request, Plaintiff transported goods and materials for Defendant, that Defendant agreed to pay Plaintiff's charges, and that Defendant failed to pay.

Defendant's answer pled, *inter alia*, that it is a "motor carrier broker of property," that Plaintiff "contracted with the shipper," not with Defendant, for transporting the shipper's goods, and that Defendant has "no liability to [Plaintiff]."

The trial court entered summary judgment for Defendant. Plaintiff appeals.

Defendant's motion for summary judgment and Plaintiff's response thereto established the facts set forth in the following paragraph.

From December 1995 through April 1996, Defendant arranged for Plaintiff to transport goods owned by Home Express, Inc. ("HEI") in interstate commerce. All of the bills of lading[1] except one identify HEI as either "the shipper/consignor or the consignee, and most often as both." On February 7, 1996, HEI "filed a Chapter 11 proceeding in the United States Bankruptcy Court for the Northern District of California."

Defendant's motion for summary judgment averred Defendant, in arranging for Plaintiff to transport HEI's goods, acted "as either a transportation broker of property or as agent for a disclosed principal." Plaintiff denied that averment.

Defendant's motion for summary judgment averred the bills of lading constitute "the contract of carriage for the shipments"; consequently, the bills of lading provided Plaintiff "with express notice that [HEI] as the shipper/consignor, consignee and/or beneficial owner of the shipments was the only party liable for freight charges."

In support of the averments in the preceding paragraph, Defendant directed the trial court to an affidavit of its president, F. William Schuman, executed July 13, 1998 ("the first Schuman affidavit"). In that document, Schuman avowed Defendant acted as HEI's "agent and consultant" in arranging for the transportation on which Plaintiff's claim is based, that Defendant entered into no contract on its own with Plaintiff, and that HEI was "clearly disclosed on the bills of lading as the principal for whom [Defendant] was acting as agent." The first Schuman affidavit further declared that in the transportation industry, the bill of lading is the contract of carriage for the hauling of goods, that sixteen of the nineteen bills of lading constituting Plaintiff's claim identify HEI as the shipper, that two of the three remaining bills of lading identify HEI as the consignee, and that the only entity that agreed to pay for the freight was HEI. Additionally, the first Schuman affidavit proclaimed that carriers such as Plaintiff send their bills to Defendant, that Defendant analyzes the bills and requests funds from the shippers to pay the carriers, that Defendant never paid Plaintiff from Defendant's own funds, and that Defendant received no funds from HEI to pay the charges claimed in Plaintiff's petition.

Plaintiff denied Defendant's averment that the bills of lading constitute the contract of carriage. Instead, responded Plaintiff, the contract of carriage is a docu-

---

1. A bill of lading is defined in Black's Law Dictionary (7th Ed., West Group 1999) p. 159, as "a document that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods."

ment entitled "Transportation Contract" dated November 2, 1994, attached to Plaintiff's response as Exhibit A. That document (the "Transportation Contract") is signed by Schuman on behalf of Defendant and by Plaintiff's "Director of Traffic & Pricing."

The Transportation Contract provides, *inter alia*, that Defendant shall pay Plaintiff "for all transportation services rendered to [Defendant] at the rates and charges set forth in Appendix A." No "Appendix A" is attached to the Transportation Contract.

Another document attached to Plaintiff's response to Defendant's motion for summary judgment is an affidavit of Plaintiff's "Credit Manager," Dale Hite, executed August 27, 1998 ("the Hite affidavit"). In that document, Hite avowed Plaintiff "looked solely to defendant for payment of shipping charges for cargo shipped at the request of defendant." The Hite affidavit further declared that at no time did HEI "engage plaintiff's services to carry goods," that Defendant "never informed plaintiff of a claimed agency relationship between defendant and [HEI] ... until [HEI] filed for bankruptcy protection," and to Plaintiff's knowledge, it "is not listed as a creditor on any schedule of creditors currently on file in the [HEI] bankruptcy."

Rule 74.04, Missouri Rules of Civil Procedure, governs summary judgments. The current version has remained unchanged since January 1, 1994, and was in force throughout the time this case was pending in the trial court. Paragraph (c)(3) of the rule reads, in pertinent part:

"*Rulings on Motions for Summary Judgment.* After the response has been filed or the time for filing the response has expired, whichever is earlier, the judgment sought shall be entered forthwith if a motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...."

This court finds nothing in the above rule allowing a party who has moved for summary judgment—in this case, Defendant—to file anything in reply to the nonmoving party's response to the motion for summary judgment. Nonetheless, fifty-three days after Plaintiff filed its response to Defendant's motion for summary judgment, Defendant filed a "Reply to Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment." That document is henceforth referred to as "Defendant's Reply."[2]

Defendant's Reply sets forth a "Revised Statement of Facts." One averment therein is that the Transportation Contract (Exhibit A attached to Plaintiff's response) "was specifically and exclusively in regard to shipments for DFS–Group Ltd.," and "does not apply to the [HEI] shipments at issue." That is evident, pled Defendant's Reply, from the "Appendix A" referred to in the Transportation Contract (but not attached thereto).

Attached to Defendant's Reply is a document designated "APPENDIX A." At its top, it displays the name "PRIME inc." It is dated December 20, 1994, and sets forth rates for hauling freight from points in California to points in sixteen other states, together with rates for hauling freight from points in those states to California. One provision in the document reads: "Rates apply for the Account of PROFES-

---

**2.** Defendant's Reply also responded to a "Counter–Motion for Summary Judgment" filed by Plaintiff wherein Plaintiff sought judgment in its favor on its petition. The trial court denied Plaintiff's motion. Plaintiff raises no issue about that ruling in this appeal, presumably because of the holding in *Carney Funeral Chapel, Inc. v. Savings of America, Inc.,* 978 S.W.2d 820 (Mo.App. S.D.1998), and cases cited there, that a trial court's denial of a motion for summary judgment presents no appealable issue. *Id.* at 825[1].

SIONAL LOGISTICS MANAGEMENT COMPANY INC."

Defendant's Reply pleads that all but three of the shipments at issue originated from HEI's facility in Mira Loma, California, destined for Omaha, Nebraska. Defendant's Reply points out that Nebraska is not listed as a "destination point" on Appendix A. Consequently, asserts Defendant's Reply, Appendix A demonstrates the Transportation Contract does not apply to Plaintiff's carriage of HEI's goods.

Another document attached to Defendant's Reply is an affidavit of Schuman executed October 15, 1998 ("the second Schuman affidavit"). In that document, Schuman avowed Sheila Cunha, an "Account Manager" employed by Defendant, was responsible for the HEI account, that on October 14, 1998 (the day before the second Schuman affidavit) he—Schuman—conferred with Ms. Cunha, that she told him she contacted one James Wright, Plaintiff's sales and marketing manager, around December 1995 about shipments from HEI's warehouse in Mira Loma, California, to one of its retail stores in Omaha, Nebraska, that she told Wright Defendant "was acting on behalf of [HEI]," and that she and Wright signed a contract January 11, 1996, regarding the HEI shipments.

Another document attached to Defendant's Reply is the January 11, 1996, contract referred to in the second Schuman affidavit. That contract (the "1996 contract") lists shipping rates from Mira Loma, California, to seven destinations, one of which is Omaha, Nebraska. One provision in the 1996 contract reads: "Regardless of what document(s) may be used in conjunction with transportation of any Cargo, the Uniform Straight Bill of Lading and it's [sic] Rules, Contract Terms and Conditions will be deemed to apply."

Ten months after Defendant filed Defendant's Reply, the trial court informed counsel for the parties by letter:

"I have become convinced that the November 2, 1994 Contract which Plaintiff relies on applies to the DFS–Group, Ltd. rather than [HEI]. In view of that, I believe that Defendant's Motion for Summary Judgment should be sustained...."

The trial court subsequently entered judgment consistent with that conclusion. The judgment states, *inter alia:*

"[Plaintiff] contends ... that the shipments at issue were not '[HEI] shipments' but were transported for [Defendant] pursuant to a Transportation Contract dated November 2, 1994, between the parties. This court finds that the argument of [Plaintiff] and affidavit in support of such contention is not credible. The November 2, 1994 contract applied only to shipments for a company called DFS Group, Ltd., and the parties separately agreed that the [HEI] shipments would be governed by the rules, contract terms and conditions of the Uniform Bill of Lading for each shipment at issue here.

. . . .

The bills of lading establish that [HEI] was responsible for payment of freight charges and not [Defendant].

As [Defendant] neither collected the freight charges from [HEI] nor clearly assumed liability by contract or conduct, neither of the two circumstances in which a broker or agent can be held liable for freight charges is present in this case. [Defendant] is entitled to judgment as a matter of law."

The first of the two points relied on in Plaintiff's brief reads:

"The trial court erred in granting summary judgment in favor of defendant ... because there remains in dispute a genuine issue of material fact precluding the entitlement of [Defendant] to judgment as a matter of law in

that there remains in dispute the material fact of whether the parties had a meeting of the minds and intended to be bound by the 'Transportation Contract' between [Defendant] and [Plaintiff]. In the ... Hite [affidavit], submitted in opposition to [Defendant's] motion for summary judgment, Hite swears that the shipments at issue were made under the terms of the 'Transportation Contract,' which obligates [Defendant] to pay for the transportation charges."

■ In an appeal from a summary judgment, a Missouri appellate court reviews the record in the light most favorable to the party against whom judgment was entered, according that party the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376[1] and [3] (Mo. banc 1993). The propriety of summary judgment is purely an issue of law. *Id.* at [6]. As the trial court's judgment is founded on the record and the law, an appellate court need not defer to the trial court's grant of summary judgment. *Id.*

■ The purpose of summary judgment is to identify cases where there is no genuine dispute as to the facts and the facts as admitted show a legal right to judgment for the movant. *Id.* at 380[11]. To defeat a motion for summary judgment, the non-movant need show only that there is a genuine dispute as to the facts underlying the movant's right to judgment. *Id.* at 381–82. Any evidence in the record that presents a genuine dispute as to the material facts defeats the motion. *Id.* If the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and movant fails. *Id.*

The thrust of Defendant's motion for summary judgment was that (a) the bills of lading for the shipments on which Plaintiff's petition is based constitute the contract of carriage, (b) the bills of lading establish that HEI—the shipper—is the entity liable for Plaintiff's charges, and (c) Defendant, as a freight broker or agent of a disclosed principal—HEI—is not liable to Plaintiff.

The thrust of Plaintiff's response to Defendant's motion for summary judgment was that (a) the Transportation Contract obligated Defendant to pay Plaintiff for the shipments on which Plaintiff's petition is based, and (b) Defendant never informed Plaintiff that Defendant was acting as only a freight broker or agent for a disclosed principal, HEI.

Plaintiff concedes that if the facts are as Defendant claims in its motion for summary judgment, Defendant is not liable to Plaintiff. In Plaintiff's words: "If the finder of fact ultimately believes that the parties had a meeting of the minds and intended to be bound only by the terms of the bills of lading, [Defendant] would be successful in its defense."

However, Plaintiff maintains the rights and obligations of the parties in regard to the shipments on which Plaintiff's petition is based are established by the Transportation Contract. Plaintiff declares: "If the finder of fact ultimately believes that the parties had a meeting of the minds and intended to be bound by the terms of the 'Transportation Contract' as claimed by [Plaintiff], [Plaintiff] would be entitled to recover against defendant." Consequently, insists Plaintiff, the record "clearly reveals the existence of a dispute as to a genuine issue of material fact."

■ This court agrees with Plaintiff that Defendant's motion for summary judgment and Plaintiff's response create a genuine issue as to whether the bills of lading for the shipments on which Plaintiff's petition is based constitute the con-

tract of carriage for those shipments or whether the contract of carriage for those shipments is the Transportation Contract. Defendant does not assert it is entitled to summary judgment if the Transportation Contract is the contract of carriage. Therefore, had the trial court ruled on Defendant's motion for summary judgment on the basis of only the motion (and its attachments) and Plaintiff's response (and its attachments), the issue identified in the first sentence of this paragraph would have precluded summary judgment in Defendant's favor.

However, the battle did not end when Plaintiff filed its response to Defendant's motion for summary judgment. Defendant fired another salvo—Defendant's Reply—accompanied by the second Schuman affidavit, Appendix A, and the 1996 contract. The trial court, in awarding Defendant summary judgment, obviously found Defendant's Reply and its attachments persuasive. As we have seen, one of the findings in the judgment is that the Transportation Contract (relied on by Plaintiff to defeat Defendant's motion for summary judgment) applied to only shipments for DFS–Group, Ltd. That theory was not presented by Defendant in its motion for summary judgment; instead, that theory was presented by Defendant's Reply.

■■■ This court holds the plain meaning of Rule 74.04(c)(3), quoted earlier, is that a trial court, in deciding whether to grant a motion for summary judgment, should consider only the motion and the response—the only pleadings authorized by Rule 74.04(c)(1) and (2)—together with the affidavits, admissions, deposition testimony and documents referred to in those pleadings. A trial court's decision on a motion for summary judgment should not be based on anything filed after the non-moving party files its response.[3] Otherwise, a summary judgment proceeding could become a blizzard of paper, as it almost did here.[4]

Because, as explained earlier, Defendant's motion for summary judgment and Plaintiff's response create a genuine issue of material fact precluding summary judgment in Defendant's favor, this court holds the trial court erred in granting Defendant's motion.

■■■ There is a second reason the trial court erred in that ruling. In its judgment, the trial court found the Hite affidavit attached to Plaintiff's response "is not credible." A trial court has no authority to weigh credibility on conflicting affidavits in adjudicating a motion for summary judgment. *North Central County Fire Alarm System, Inc. v. Maryland Heights Fire Protection District*, 945 S.W.2d 17, 21[5] (Mo.App. E.D.1997).

---

3. This court does not imply Defendant transgressed Rule 74.04 when it filed Defendant's Reply. As observed in footnote 2, *supra*, Defendant's Reply had two objectives. First, it rebutted Plaintiff's response to Defendant's motion for summary judgment; second, it responded to a "Counter–Motion for Summary Judgment" filed by Plaintiff. Defendant, of course, had the right under Rule 74.04(c)(2) to file a response to Plaintiff's "Counter–Motion." The second Schuman affidavit, Appendix A, and the 1996 contract were appropriate responses to Plaintiff's "Counter–Motion." Accordingly, the trial court, in ruling on Plaintiff's "Counter Motion," could properly treat Defendant's Reply as a response to Plaintiff's "Counter Motion." In saying that, this court does not ignore Plaintiff's contention—which may have some

merit—that Defendant's Reply does not fully meet the requirements for a response in Rule 74.04(c)(2). Plaintiff's "Counter–Motion" and Defendant's Reply obviously create a factual issue pertinent to Plaintiff's "Counter–Motion," i.e., whether the rights of the parties regarding the HEI shipments were governed by the Transportation Contract or the 1996 contract.

4. Defendant could have filed a new motion for summary judgment supported by the documents attached to Defendant's Reply. A subsequent motion for summary judgment based on an expanded record is permissible. *M & P Enterprises, Inc. v. Transamerica Financial Services*, 944 S.W.2d 154, 162[11] (Mo. banc 1997).

■ The trial court may have committed a third error in awarding Defendant summary judgment. The second Schuman affidavit recites information Schuman received from Ms. Cunha about the 1996 contract. Schuman's signature does not appear on the 1996 contract and nothing in the second Schuman affidavit indicates Schuman knew anything about the 1996 contract except what he learned from Ms. Cunha.[5]

The trial court may have relied on the hearsay from Ms. Cunha in the second Schuman affidavit. Any such reliance would have constituted error. Rule 74.04(e) requires that affidavits supporting a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Midwest Precision Casting Co. v. Microdyne, Inc.*, 965 S.W.2d 393, 395 (Mo.App. E.D.1998). Hearsay statements in an affidavit are not facts admissible in evidence and should not be considered by a trial court in adjudicating a motion for summary judgment. *Id.* at 396[5].

In sum, when Defendant's motion for summary judgment (together with the attachments thereto) and Plaintiff's response (together with the attachments thereto) are viewed in the light most favorable to Plaintiff, there is a *genuine* issue as to a material fact, i.e., whether the bills of lading for the shipments in issue constitute the contract of carriage for those shipments or whether the contract of carriage for those shipments is the Transportation Contract. The existence of that issue precludes summary judgment for Defendant.

That holding does not imply Plaintiff should win when the case is tried on the merits. The fact-finder (either a jury or the trial court) will decide whether Plaintiff's evidence or Defendant's evidence is more persuasive. This court decides only that Defendant, on the record here, is not entitled to summary judgment in its favor on the claim in Plaintiff's petition. That holding makes it unnecessary for this court to consider Plaintiff's second assignment of error.

The judgment is reversed and this case is remanded to the trial court for further proceedings.

BARNEY, C.J., and MONTGOMERY, J., concur.

■

---

**5.** Parenthetically, this court notes the 1996 contract was ostensibly signed January 11, 1996. Several of the bills of lading on which Plaintiff's petition is based bear dates earlier than that, a circumstance contrary to Defendant's theory that under the 1996 contract, the bills of lading constitute the contract of carriage for all of the shipments in issue.