**In the ESTATE OF Laura DOWNS, Deceased; James Rutter, Respondent,**

v.

**Eldon BUGG, Appellant.**

**No. WD 67229.**

Missouri Court of Appeals, Western District.

Oct. 9, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 20, 2007.

Application for Transfer Denied Jan. 22, 2008.

Eldon K. Bugg, Booneville, MO, pro se.

Jean S. Goldstein, Columbia, MO, for Respondent.

Before LOWENSTEIN, P.J., ELLIS and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Eldon Bugg appeals from a discovery of assets proceeding, wherein the circuit court ruled that Mr. Bugg improperly held funds belonging to the Estate of Laura Downs, the decedent. The court entered summary judgment in favor of the Estate and against Mr. Bugg in the amount of $17,573.71, plus interest and costs. For reasons explained herein, we affirm the judgment and order Mr. Bugg to pay $1,500 in attorneys' fees as damages for a frivolous appeal.

FACTUAL AND PROCEDURAL HISTORY

In 1991, Mr. Bugg, although not an attorney, drafted a durable power of attorney for Laura Downs, an elderly woman he met through church. During that same year, Mr. Bugg borrowed $42,000 from Ms. Downs and executed a promissory note, agreeing to pay her monthly interest of $385.

In 1997, Mr. Bugg drafted a revocable trust for Ms. Downs, naming himself and Ms. Downs as co-trustees. The net income of the trust was to pay Ms. Down's living expenses. Upon her death, the remainder of the trust was to go Mr. Bugg and his wife, Wanda Bugg.

In April 2000, Mr. Bugg used his power of attorney to purportedly assign all proceeds from the 1991 promissory note to the trust. The assignment was made to himself and Ms. Downs as co-trustees, even though Mr. Bugg was the obligor on the promissory note. Approximately one year later, Mr. Bugg drafted a receipt to indicate that the $42,000 note had been fully paid to the trust.

In November 2000, the Boone County Public Administrator was appointed guardian and conservator for Ms. Downs, who suffered from dementia and was adjudged incapable of managing her financial resources and daily needs.[1] A month later, the Public Administrator filed a petition for discovery of Ms. Downs' assets, referencing the 1991 promissory note.

In defense of the petition, Mr. Bugg asserted the proceeds of the 1991 note, $42,000 in principal and $4,200 in interest, had been assigned and paid to the trust. The circuit court rejected this defense, finding the loan proceeds were never transferred to the trust and the asset be-

---

1. Mr. Bugg filed a motion to terminate the appointment of the Public Administrator, citing his durable power of attorney and the revocable trust. The circuit court denied the motion.

longed to Ms. Downs' conservatorship. On appeal, we affirmed the judgment by order and memorandum opinion. *Estate of Downs v. Bugg*, 75 S.W.3d 853 (Mo.App. 2002) (*"Downs I"*).

Ms. Downs died in September 2001, during the pendency of the *Downs I* appeal. James Rutter was subsequently appointed as Personal Representative of Ms. Downs' Estate. In July 2004, the Estate and Mr. Rutter (collectively "Estate") filed a petition for discovery of assets, alleging that Mr. Bugg improperly retained possession of the $42,000 promissory note. The parties filed cross-motions for summary judgment, and Mr. Bugg also sought leave to file a counterclaim to reform his self-drafted durable power of attorney. The court denied Mr. Bugg's motions and granted the Estate's motion for summary judgment. The judgment awarded the Estate $17,573.71 [2] from the promissory note, plus interest, and attorneys' fees of $459.80 for Mr. Bugg's failure to appear at a scheduled deposition.

Mr. Bugg appeals the summary judgment rulings and the denial of his counterclaim. The Estate has filed a "Motion for Damages for Frivolous Appeal." At the oral argument of this appeal, Mr. Bugg failed to appear.

## SUMMARY JUDGMENT RULINGS

In his first and second points on appeal, Mr. Bugg contends the circuit court erred in denying his summary judgment motion and in granting the Estate's summary judgment motion. Generally, the denial of a summary judgment is not a final order and, therefore, is not appealable. *Penn–Am. Ins. Co. v. The Bar, Inc.*, 201 S.W.3d 91, 96 (Mo.App.2006). We note, however, that some of the issues

raised in Mr. Bugg's summary judgment motion are directly related to grounds he asserted in opposition to the Estate's summary judgment motion. To the extent the merits of Mr. Bugg's motion are "completely intertwined" with the grant of summary judgment in the Estate's favor, we will address his arguments in that context. *Id.*

The applicable standard of review for summary judgment was explained as follows in *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted):

> When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

> Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

The Estate filed a discovery of assets claim, pursuant to Section 473.340, to determine its title or right to possession of

---

**2.** Mr. Bugg was allowed an offset against the promissory note for $28,626.29 in document-

ed expenses he paid on behalf of Ms. Downs.

the 1991 promissory note. To prevail on summary judgment, the Estate was required to show that there were no genuine issues of material fact on two elements: (1) Ms. Downs had title to the promissory note at the time of her death, and (2) the promissory note was being adversely withheld by Mr. Bugg. *See Ruestman v. Ruestman,* 111 S.W.3d 464, 476 (Mo.App. 2003); *In re Estate of Boatright,* 88 S.W.3d 500, 509 (Mo.App.2002).

The Estate's summary judgment motion relied on the prior rulings and evidence in *Downs I* as proof of both elements. In *Downs I,* the court of appeals affirmed the circuit court's judgment that Ms. Downs was the owner of the promissory note and that Mr. Bugg had wrongfully withheld the note proceeds from Ms. Downs' conservatorship. Despite the judgment, Mr. Bugg did not relinquish the funds to either the conservatorship or the Estate after Ms. Downs died during the pendency of the appeal in *Downs I.* The conservatorship ceased to exist after Ms. Downs' death and, thus, could not take further steps to enforce the judgment in *Downs I.* The Estate subsequently filed a new discovery of assets action and sought summary judgment based on the prior determination of Ms. Downs' ownership of the note and Mr. Bugg's wrongful withholding thereof. The summary judgment motion also relied on Mr. Bugg's deposition testimony and exhibits from *Downs I* and an affidavit from James Rutter, personal representative of the Estate.

Mr. Bugg opposed the summary judgment, largely on grounds that the Estate failed to "refute his affirmative defenses." His Second Amended Answer asserted several affirmative defenses, but Mr. Bugg's response to the summary judgment motion did not identify any defense other than "claim preclusion." His response also failed to explain how the defense of claim preclusion negated the action for discovery of assets. Ultimately, the circuit court granted the Estate's summary judgment motion, finding that the prior ruling in *Downs I* "resolved all factual and legal matters at issue."

 On appeal, Mr. Bugg contends the court erred in granting summary judgment because the Estate failed to state a proper claim for discovery of assets and the action was barred by the affirmative defenses of "*res judicata,* claim splitting, collateral estoppel, and law of the case." We conclude that Mr. Bugg waived any claim with regard to his affirmative defenses because he failed to properly assert them in his opposition to the summary judgment motion. *Joshi v. St. Luke's Episcopal Presbyterian Hosp.,* 142 S.W.3d 862, 866 (Mo.App.2004). Moreover, the Estate's summary judgment motion correctly stated the elements for the discovery of assets claim and provided documented facts in support of the claim. The Estate relied on considerable evidence from *Downs I,* and the circuit court was entitled to consider the prior judgment in determining whether the 1991 note had been transferred to the trust or remained in Mr. Bugg's possession. Because Mr. Bugg failed to present any additional evidence to dispute the prior ruling that he held the note proceeds, the Estate was entitled to summary judgment. Points I and II are denied.

### DENIAL OF COUNTERCLAIM

In his final point, Mr. Bugg contends the circuit court erred in denying him leave to file a counterclaim for reformation of the durable power of attorney. The court determined the counterclaim was improper because it was a compulsory counterclaim that Mr. Bugg should have raised in *Downs I.* On appeal, Mr. Bugg argues that the Estate failed to raise the compulsory counterclaim rule as an affirmative

defense and, therefore, the court could not deny the counterclaim on that ground.

 We review the circuit court's decision to deny the counterclaim for abuse of discretion. *Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 536 (Mo. banc 2002). Although the court could have permitted the counterclaim to proceed in the absence of an affirmative defense, it was not required to do so. Mr. Bugg does not dispute that his counterclaim was in fact a compulsory claim that should have been raised in *Downs I*. The record reflects that the court denied leave to file the counterclaim only after discussing the compulsory counterclaim rule with Mr. Bugg, during an in chambers conference, and giving him an opportunity to respond.

A court has authority to *sua sponte* deny or dismiss a claim on grounds of *res judicata*, regardless of whether the benefiting party has waived it as an affirmative defense. *Patrick v. Koepke Constr., Inc.*, 119 S.W.3d 551, 555 (Mo.App.2003). Principles underlying the compulsory counterclaim rule are closely associated with the doctrine of *res judicata* and are, therefore, applicable here. *Joel Bianco Kawasaki Plus*, 81 S.W.3d at 532. We find no abuse of discretion in the circuit court's denial of Mr. Bugg's counterclaim. Point III is denied.

### Motion for Attorneys' Fees

The Estate has moved for an award of attorneys' fees as damages for a frivolous appeal, pursuant to Rule 84.19. "An appeal is frivolous if it presents no justiciable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect that it can ever succeed." *Dennis v. H & K Mach. Serv. Co.*, 186 S.W.3d 484, 487 (Mo. App.2006). This court awards damages under Rule 84.19 with great caution and then only where such damages will serve

"(1) to prevent congestion of the appellate court dockets with meritless cases which, by their presence, contribute to delaying resolution of meritorious cases and (2) to compensate respondents for the expenses they incur in the course of defending these meritless appeals." *Johnson v. Aldi, Inc.*, 971 S.W.2d 911, 912 (Mo.App.1998).

All of the issues in this appeal were adequately resolved in *Downs I* or should have been raised by Mr. Bugg in that prior proceeding. In essence, he presented no justiciable issues for review. In addition, just as he failed to attend his deposition in the underlying proceeding, Mr. Bugg failed to appear at the oral argument on appeal and did not alert the court or opposing counsel of his absence. The Estate has incurred attorney's fees in defending this meritless appeal.

The motion for damages for frivolous appeal is granted. Mr. Bugg is hereby ordered to reimburse the Estate for attorney's fees in the amount of $1,500.

All concur.