**GEMINI CAPITAL GROUP, LLC, Plaintiff–Appellant,**

v.

**Daniel TRIPP and Lela Thoms, Defendants–Respondents.**

No. SD 32289.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 1, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 2013.

Brett W. Roubal, Springfield, MO, Joshua C. Dickinson, Omaha, NE, for appellant.

Gregory W. Aleshire, Gregory A. Dorshorst, Springfield, MO, for respondent.

MARY W. SHEFFIELD, J.

Gemini Capital Group, LLC ("Gemini") appeals from the trial court's order denying its motion to compel arbitration of counterclaims asserted against it by Daniel Tripp ("Tripp") and Lela Thoms ("Thoms").[1] Gemini argues the trial court erred in finding Gemini had waived its right to compel arbitration. We find Gemini did not prove it was a party to a valid arbitration agreement with Tripp and Thoms. Therefore, we affirm the order of the trial court.

### *Factual and Procedural Background*

In 2006, Tripp and Thoms entered into a two-page retail installment contract with Auto Master # 6 ("Auto Master") for the purchase of a 2001 Ford Taurus. In connection with the transaction, Tripp and Thoms also signed an arbitration agreement. At the same time, Auto Master purported to assign its rights under the retail installment contract to SHAC, Inc. ("SHAC") by filling in a blank on the front page of the contract. Later there were alleged assignments from SHAC to the Sagres Company ("Sagres") and finally from Sagres to Gemini.

In 2010, Gemini filed a petition for breach of contract against Tripp and Thoms, alleging (1) Gemini was an assignee under the original assignment from Auto Master and (2) Tripp and Thoms had failed to make payments due under the retail installment contract. In their answer, Tripp and Thoms asserted as an affirmative defense that Gemini had "failed to establish any proper assignment" and, therefore, lacked capacity to sue. They also asserted two counterclaims.

After discovery, Tripp and Thoms filed a motion to dismiss Gemini's petition with prejudice because Gemini had failed to produce documents showing a valid assignment of rights from Auto Master to Gemini. Following a hearing, the trial court announced it would treat Tripp and Thoms's motion to dismiss as one for summary judgment and ordered Gemini to respond within thirty days. Gemini failed to respond, and the trial court dismissed Gemini's petition with prejudice because Gemini lacked standing to pursue its claim against Tripp and Thoms. On the same day, Gemini filed a voluntary dismissal of its petition against Tripp and Thoms.

Gemini subsequently requested the trial court to set aside the dismissal with prejudice because a voluntary dismissal had been filed prior to the trial court's judgment of dismissal. The trial court found the voluntary dismissal had been filed mere hours before the trial court's judgment, set aside the dismissal with prejudice, and dismissed Gemini's petition without prejudice.

Meanwhile, Tripp and Thoms had previously sought leave to amend their answer to include additional counterclaims and to request class certification. In response, Gemini filed a motion to dismiss or in the alternative to compel arbitration. Gemini provided a number of exhibits in support of its motion. These exhibits purported to show the chain of assignment of the retail installment contract and the arbitration agreement. These documents included a copy of the retail installment contract, a copy of the arbitration agreement, an affidavit from SHAC's legal director, Dino R.J. Hall ("Hall"), and an affidavit from Gemini's CEO, Roger Neustadt ("Neustadt").

---

1. Section 435.440.1(1), RSMo (2000), provides "[a]n appeal may be taken from ... [a]n order denying an application to compel arbitration[.]"

In his affidavit, Hall stated he was familiar with SHAC's operations and the documents related to Tripp and Thoms's debt. Four documents were attached to Hall's affidavit. The first was a copy of the retail installment contract between Auto Master and Tripp and Thoms. The second was an unsigned purchase agreement, which purported to govern the sale of accounts from SHAC to Sagres. The third document was an assignment and bill of sale which stated:

> SHAC, Inc., ("Seller"), for value received and pursuant to the terms and conditions of the Purchase and Sale Agreement dated as of the 18th day of December 2007 ("Agreement") between Seller and The Sagres Company (hereinafter called "Purchaser") sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in and to those certain Accounts and Accounts Receivable (which terms are defined in the Agreement) listed on Exhibit A attached hereto.

Exhibit "A" was not included.

According to Hill's affidavit, Exhibit "A" was no longer available. Instead, the fourth attached document was a one-page computer printout of a portion of a list of account information. The file from which the section of information was taken was titled "COMPLETE NR SALE FILE–01–25–08[.]" There was no other information on the page identifying the source of the portion of the list or linking the information to SHAC, Sagres, or Gemini. Although the print-out was unclear, Hall's affidavit stated the computer printout included information about Tripp and Thoms's account. Hall's affidavit also stated Exhibit "A" had existed "and based on the computer print-out showing the accounts sold to [Sagres]" he could confirm Tripp and Thoms's account was among those listed in Exhibit "A". However, there was no description of any details as to the accounts contained in Exhibit "A".

Neustadt's affidavit was similar to Hall's affidavit. Neustadt stated he was familiar with Gemini's operations and the documents related to Tripp and Thoms's account. Various documents were attached to Neustadt's affidavit. Closing statements and account documents showed Gemini had purchased 869 accounts from Sagres. A purchase agreement and an assignment and bill of sale, nearly identical to those accompanying Hall's affidavit, were also included. These documents also referred to an Exhibit "A". Again, Gemini did not provide Exhibit "A" and instead provided only a computer print-out identifying Tripp and Thoms's information.

A hearing was held at which the parties presented argument but no evidence. The trial court began the hearing by asking Gemini's attorney "why Gemini ha[d] not waived the arbitration clause by its previous conduct in this litigation." Gemini's attorney answered Gemini had not waived its right to arbitrate because (1) no on-the-merits litigation had occurred prior to the filing of the motion to compel arbitration and (2) the amended counterclaims substantially changed the nature of the litigation. Tripp and Thoms's attorney responded that on-the-merits litigation had occurred because the central issue in the case was Gemini's standing to enforce the installment sales contract and during the course of discovery "it became very clear, based upon their answers to requests for admissions and discovery, that they did not have documentation to establish standing." He then argued Gemini's motion should be denied because Gemini was unable to show the proper chain of assignment.

The trial judge next asked the parties whether the trial court should address the

standing issue before the waiver issue. Gemini's attorney replied the affidavits showed standing. Later, the trial judge asked if he needed to address the waiver issue first. Tripp and Thoms's attorney replied "there are no cases that give us a clear direction under these circumstances." Ultimately, the trial court said it would take the matter under advisement to decide the waiver issue because the standing issue was an issue for the arbitrator if there was no waiver.

The trial court subsequently denied Gemini's motion, finding Gemini had waived its right to compel arbitration. This appeal followed.

### *Discussion*

■ In two related points on appeal, Gemini argues the trial court erred in finding it had waived its right to arbitrate. However, we need not reach the issue of whether Gemini waived its right to arbitrate because Gemini failed to establish it was a party to a valid arbitration agreement.

■ Initially, we note the parties may have inadvertently led the trial court into error by their suggestion that the trial court was obligated to decide the issue of waiver before reaching the issue of whether there was a valid arbitration agreement. "It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have *agreed* to arbitrate claims." *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo.App. W.D.2011) (quoting *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 21 (Mo.App. W.D.2008)). Thus, "[w]hen faced with a motion to compel arbitration," the court must first "determine whether a valid arbitration agreement exists." *M & I Marshall & Ilsley Bank v. Sader & Garvin, L.L.C.*, 318 S.W.3d 772, 776 (Mo.App.

W.D.2010) (quoting *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006)); *see also Korte Const. Co. v. Deaconess Manor Ass'n*, 927 S.W.2d 395, 400 (Mo.App. E.D.1996). Furthermore, "the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other." *Koch v. Compucredit Corp.*, 543 F.3d 460, 464 (8th Cir.2008). Based on these authorities, the trial court erred when it considered the issue of waiver before considering the issue of whether there was a valid arbitration agreement between these parties. If there was no valid arbitration agreement, there could be no waiver.

■ Nevertheless, as "we are 'primarily concerned with the correctness of the trial court's result,'" we will affirm the trial court's order if it is "cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Ewanchuk v. Mitchell*, 154 S.W.3d 476, 481 (Mo.App. S.D.2005) (quoting *Business Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999)). Here, we believe the trial court reached the correct result because Gemini failed to prove the chain of assignment.

■ While federal law governs the enforcement of arbitration clauses, *Major Cadillac, Inc. v. General Motors Corp.*, 280 S.W.3d 717, 721 (Mo.App. W.D.2009), determination of whether an agreement to arbitrate exists in the first place is governed by state law, *Korte*, 927 S.W.2d at 399–400. Under Missouri law, if, after the filing of a motion to compel arbitration, "the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised[.]" § 435.355.1 RSMo (2000). The issue must be determined upon the evidence before the circuit court.

*Creech v. MBNA Am. Bank, N.A.*, 250 S.W.3d 715, 717–18 (Mo.App. S.D.2008). Furthermore, as the party seeking to compel arbitration, Gemini bore the burden of proving the existence of a valid arbitration agreement. *Whitworth,* 344 S.W.3d at 737. To meet that burden under the facts of this case, Gemini was required to prove a valid chain of assignment, which required proof of a valid assignment every time the right to compel arbitration was purportedly transferred. *See CACH, LLC v. Askew,* 358 S.W.3d 58, 62 (Mo. banc 2012); *Korte,* 927 S.W.2d at 400.

Here, Gemini asserts that the right to collect under the retail installment contract and the corresponding right to compel arbitration under the arbitration agreement were assigned from Auto Master to SHAC, from SHAC to Sagres, and finally, from Sagres to Gemini. In the trial court, Gemini asserted this chain was demonstrated by the affidavits provided in support of their motion. However, the documentation Gemini provided fails to demonstrate the assignment of Tripp and Thoms's account. Although Gemini provided the written agreements purporting to prove the assignments, the documents merely reference lists of purchased accounts and corresponding account-holder information. The two Exhibits "A" were not included with the documentation provided to the trial court or filed as part of the record on appeal. Gemini failed to prove the chain of assignment, and its motion to compel arbitration was properly denied.

This conclusion is not altered by the affidavits and computer printouts Gemini provided. The affidavits did not provide substantial evidence of the assignments because they contained only legal conclusions as to the critical facts surrounding the assignment of Tripp and Thoms's account.

It is true the trial court is entitled to consider affidavits when ruling on pre-trial motions such as the one at issue here. Rule 55.28.[2] However, the rule allowing consideration of affidavits in this context does not explain what such affidavits must show, so courts look to the provisions of Rule 74.04(e) for guidance. *Wood v. Procter & Gamble Mfg. Co.,* 787 S.W.2d 816, 820 (Mo.App. E.D.1990). Under Rule 74.04(e), "[s]upporting and opposing affidavits must be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." *St. Charles Cnty. v. Dardenne Realty Co.,* 771 S.W.2d 828, 830 (Mo. banc 1989). Furthermore, "[t]he proper function of an affidavit is to state facts, not conclusions." *Bakewell v. Missouri State Employees' Retirement System,* 668 S.W.2d 224, 227 (Mo.App. W.D.1984). "Legal conclusions are not admissible facts." *Scott v. Ranch Roy–L, Inc.,* 182 S.W.3d 627, 635 (Mo.App. E.D. 2005). For example, an affidavit stating a particular party is a successor party in interest under a contract is merely a legal conclusion and does not state facts sufficient to show the party is in fact a successor party in interest. *Id.*

Here, similarly, there were no facts in the affidavits regarding the assignments. The affidavits simply said Tripp and Thoms's account had been assigned. Those statements were legal conclusions that could not meet Gemini's burden of proving the assignments. The assertion in Hall's affidavit states the exhibit attached to the bill of sale is unavailable. Proving the contents of lost documents, however, requires more than legal conclusions. *See*

2. All rule references are to Missouri Court Rules (2013).

§ 109.160, RSMo (2000) (providing that lost judgments may be proved by affidavit but that the affidavit must set out "as near as may be the full contents" of the lost document); *Oberkramer v. Brown,* 635 S.W.2d 63, 65 (Mo.App. E.D.1982) (reestablishing title under a lost deed requires, among other things, a description of the property, a description of the nature and extent of the petitioner's interest, and the names of the people who executed the document). The conclusions in the affidavits Gemini provided simply were not sufficient to meet Gemini's burden.

This conclusion is buttressed by the fact that the computer print-outs—the only documents linking Gemini to Tripp and Thoms's account—were not admissible in evidence because they were hearsay and did not fall into the business records exception to the hearsay rule. To admit business records, the party offering such evidence must show, among other things, how the document was prepared and that it was made in the regular course of business at or near the time of the act it records. *See* § 490.680, RSMo (2000). Nothing in either affidavit shows how the computer records were generated or indicates they were made in the regular course of business.

Gemini failed to meet its burden of demonstrating the chain of assignment. Consequently, the motion to compel arbitration was properly denied.

### Decision

The trial court's order denying Gemini's motion to compel arbitration is affirmed.

JEFFREY W. BATES, P.J., and DON E. BURRELL, J., concur.