

# In the Missouri Court of Appeals
# Eastern District

DIVISION FIVE

| | | |
|---|---|---|
| JEFFERSON CAPITAL SYSTEMS, LLC, | ) | No. ED112211 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 2022-AC00451-02 |
| | ) | |
| STEPHANIE RICE | ) | Honorable Michael F. Stelzer |
| | ) | |
| Respondent. | ) | FILED: August 13, 2024 |

## Opinion

In this debt collection action, Appellant, Jefferson Capital Systems, LLC (JCAP), appeals from the circuit court's order denying its amended motion to compel arbitration of Respondent, Stephanie Rice's (Rice), counterclaim under the Fair Debt Collection Practices Act (FDCPA).[1] In its sole point on appeal, JCAP alleges that the circuit court erred in denying its amended motion because JCAP provided competent evidence that arbitration rights were transferred to JCAP from the original debt holder, DriveTime, through a series of valid assignments of contractual rights. Consequently, JCAP argues it has standing to enforce the original arbitration agreement between Rice and DriveTime. We disagree. We affirm the circuit court's finding that the chain of alleged assignments of arbitration rights from DriveTime to JCAP was not supported by competent evidence. Consequently, JCAP is not entitled to compel arbitration with Rice.

---

[1] 15 U.S.C. § 1692, *et seq*

## Background

On April 18, 2015, Rice entered into a Retail Installment Contract (Contract) with DriveTime CarSales Company, LLC, doing business as DriveTime to finance the purchase of a vehicle. Cotemporaneous with the execution of the Contract, Rice entered into an arbitration agreement (Arbitration Agreement) with DriveTime. The Contract contained a provision by which DriveTime reserved the right to transfer mandatory arbitration rights to any "purchaser, assignee or servicer of the [C]ontract." The Contract also included a provision in which DriveTime transferred "all of [DriveTime's] right, title, and interest in the Contract and Vehicle" to DT Acceptance Corporation", (DT Acceptance). This transfer of all contractual rights from DriveTime to DT Acceptance, including incorporated arbitration rights, occurred on April 18, 2015, the same day Rice entered into the Contract and Arbitration Agreement.

In January of 2020, JCAP filed a deficiency and repossession suit against Rice, seeking to recover over $13,000 and the purchased vehicle. In September 2020, JCAP obtained a default judgment for $13,741.30 against Rice, which was subsequently set aside, and Rice was given leave by the court to file a responsive pleading. Rice then filed an answer and counterclaim under the FDCPA against JCAP. In response, JCAP filed a motion to compel arbitration of Rice's counterclaim.

### *First Affidavit and Initial Order*

In 2021, JCAP filed its first motion to compel arbitration of Rice's counterclaim. JCAP's motion alleged it was entitled to enforce the Arbitration Agreement as a subsequent assignee of the Contract and incorporated Arbitration Agreement. In support of its assignee status, JCAP submitted an affidavit (First Affidavit) from J.C.[2], the custodian of records for DriveTime and an

---

[2] The personal identifying information of non-party witnesses has been omitted pursuant to § 509.520, RSMo. (Cum. Supp. 2023).

additional corporation called Bridgecrest Acceptance Corporation (Bridgecrest). In the First Affidavit, J.C. identified Bridgecrest, "f/k/a [formerly known as] DT Acceptance Corporation." Other than that statement, the First Affidavit did not contain any further averments or exhibits pertaining to the relationship between DT Acceptance Corporation and Bridgecrest. The First Affidavit stated that DriveTime assigned the Contract and Arbitration Agreement to Bridgecrest on April 18, 2015, the same day that Rice executed the Contract and Arbitration Agreement upon purchasing the vehicle.

Additionally, J.C. attested that JCAP purchased accounts from Bridgecrest, and referenced an attached Bill of Sale between Bridgecrest and JCAP. J.C. did not authenticate or attach an account schedule specifically showing that Rice's Contract and Arbitration Agreement was one of the assigned accounts. On June 21, 2022, the circuit court issued its order (the Initial Order), denying JCAP's motion to compel arbitration without prejudice. The circuit court found that JCAP had not provided competent evidence of the links in the assignment chain from DriveTime to JCAP. In particular, the circuit court concluded that the First Affidavit and accompanying evidence fatally omitted the link in the assignment chain from DriveTime to DT Acceptance.

JCAP filed an interlocutory appeal from the Initial Order, and this Court affirmed the circuit court's denial of JCAP's first motion to compel. *See Jefferson Capital Systems, LLC, v. Rice*, 661 S.W.3d 50 (Mo. App. E.D. 2023) (per curiam). In our memorandum accompanying our order we held that DriveTime explicitly assigned its rights under the Contract and Arbitration Agreement to DT Acceptance Corporation on April 18, 2015, the same day the Contract was formed. "Therefore, DriveTime could not have subsequently transferred its rights to Bridgecrest because it no longer had any rights to transfer." Moreover, we noted in our memorandum that

3

the only connection between "DT Acceptance Corporation and Bridgecrest" in the First Affidavit was the reference to "Bridgecrest Acceptance Corporation f/k/a DT Acceptance Corporation" and an unsupported claim that DriveTime assigned Rice's account to Bridgecrest "as described in the [C]ontract." Upon affirming the circuit court's denial of JCAP's first motion to compel the case was generally remanded back to the circuit court.

*Second Affidavit and Second Order*

On remand in the circuit court, JCAP filed an amended motion to compel arbitration, which it supported by filing an expanded affidavit (Second Affidavit) by the same custodian, J.C. The amended motion was heard by a different judge in a different division of the circuit court. The Second Affidavit clarified that the Contract same-day assigned DriveTime's rights to DT Acceptance, and that DT Acceptance later changed its name to Bridgecrest, and Bridgecrest in turn sold Rice's account and its associated arbitration rights to JCAP.

The Second Affidavit included the following new exhibits of business records: (1) DT Acceptance's amendment to its articles of incorporation showing its name change from DT Acceptance to Bridgecrest effective April 5, 2016; (2) the Arizona Secretary of State's certified recognition of the name change from DT Acceptance to Bridgecrest dated April 11, 2016; and (3) excerpts from the Bill of Sale and Assignment of Accounts from Bridgecrest to JCAP showing Rice's account was assigned to JCAP.

In the Second Affidavit, J.C. alleged that she was the custodian of records for "the related entities" of Bridgecrest, DT Acceptance, DriveTime, and Bridgecrest Credit Company. She alleged that the Second Affidavit was "based on [her] personal knowledge and [her] review of business records kept by DriveTime Car Sales, Bridgecrest, Bridgecrest Credit Company, and their affiliated entities (collectively 'DriveTime')." J.C.'s Second Affidavit generally alleged

4

that the attached exhibits were "kept in the regular course of business" and made "at or near the time of the act, event, condition, opinion or diagnosis set forth in the record" for DriveTime. The Second Affidavit also alleged that the records attached were exact duplicates of the originals maintained by DriveTime. The Second Affidavit did not set out with specificity the mode of preparation of the documents, the connection of documents maintained by the "related entities," any alleged transfer of such records to these "related entities," or where the records originated from or who exercised control over maintaining these business records prior to DT Acceptance's name change to Bridgecrest. Separate and apart from the Second Affidavit, JCAP submitted a certified acknowledgement from the Missouri Secretary of State, dated April 21, 2016, of the name change from DT Acceptance to Bridgecrest.

A Second Order denying JCAP's amended motion to compel arbitration was issued on October 19, 2023. In the Second Order, the circuit court found JCAP had not adequately demonstrated the assignment link from DriveTime/DTAcceptance to Bridgecrest. Specifically, the Second Order stated the following:

> This Court has reviewed the record and finds that it must reach the same conclusion as [the Initial Order]. [JCAP] has failed to meet its burden here **because it failed to show a valid assignment from DriveTime/DAC to Bridgecrest.** The evidence [JCAP] relies on in support of its argument on this issue is not competent.

(Emphasis added). It is this Second Order, denying JCAP's amended motion to compel arbitration from which JCAP now appeals. During the pendency of this appeal, Rice moved for damages for a frivolous appeal pursuant to Rule 84.19,[3] and we take this motion with the case.

### Standard of Review

In reviewing a circuit court's denial of a motion to compel arbitration, we will affirm the circuit court's ruling "unless there is no substantial evidence to support it, it is against the weight

---

[3] All Rule references are to Mo. R. Civ P. (2023) unless otherwise indicated.

5

of the evidence, or it erroneously declares or applies the law." *Abram v. TitleMax of Missouri Inc.*, 684 S.W.3d 74, 86 (Mo. App. E.D. 2023) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014)). We review the evidence in a manner favorable to the circuit court's ruling, disregard contradictory evidence, and defer to the circuit court's credibility determinations. *Id.* (citing *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 437 (Mo. banc 2020)). "If the trier of fact does not believe the evidence of the party bearing the burden, it can properly find for the other party." *Id.* (quoting *Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012)).

In disputes, such as the one now before us, which are dependent on the circuit court's factual findings, we apply the standard set forth in *Murphy v. Carron*. [4] 536 S.W.2d 30 (Mo. banc 1976); *see also Abram*, 684 S.W.3d at 74 (citing *Theroff*, 591 S.W.3d at 436). In this appeal, the parties dispute whether JCAP adduced competent evidence to prove its right to enforce the Arbitration Agreement. This question presents a factual inquiry rather than an issue of law; thus, we give deference to the trial court's credibility determinations. *See Abram*, 684 S.W.3d at 76 (citing *Murphy*, 536 S.W.2d at 32).

"[I]f reasonable persons can differ about the propriety of the action taken by the [circuit] court, then it cannot be said that the [circuit] court abused its discretion." *C & W Asset Acquisition LLC v. Somogyi*, 136 S.W.3d 134, 137 (Mo. App. S.D. 2004) (quoting *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992)). We will affirm the circuit court's judgment on "any grounds supported by the record." *Bracy v. TitleMax of Missouri*, 684 S.W.3d

---

[4] We recognize that generally, when reviewing a motion to compel arbitration, we give questions of law de novo review. *Abram*, 684 S.W.3d at 86 (citing *Theroff*, 591 S.W.3d at 436). Because this case is not seeking to interpret the terms of an arbitration agreement—a question of law—but instead the factual contents of an affidavit, we review for an abuse of discretion. *See id.*

6

26, 28 (Mo. App. E.D. 2023). Any issues of statutory interpretation we review de novo. *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008).

**Discussion**

This case turns on the circuit court's determination of both the competency of evidence and the weight given that evidence. We find that JCAP, despite presenting the Second Affidavit and additional exhibits to the circuit court on remand, failed to cure a flawed link in the chain of assignments—in particular, the alleged assignment of rights from DT Acceptance to Bridgecrest. Specifically, JCAP's evidence failed to satisfy the requirements of either § 490.680,[5] Missouri's business records exception to the hearsay rule, or § 490.692, Missouri's custodian of records affidavit statute. Additionally, JCAP failed to explain the relevance of certain self-authenticating documents admitted under §§ 490.180 and 490.220, hence diminishing their probative value. We therefore affirm the circuit court's decision to deny JCAP's motion to compel arbitration. Moreover, we deny Rice's motion for damages pursuant to Rule 84.19, finding that JCAP's appeal of this matter is not frivolous.

I.      *How a valid assignment of contractual rights may be proven*

In this opinion, we consider jurisprudence that is procedurally distinguishable but relevant to the ultimate issue of whether there was competent evidence to demonstrate a valid assignment chain. Missouri courts have observed challenges to assignment chains in many contexts, including, but not limited to, motions to compel arbitration and motions to enforce the collection of a debt. Accordingly, we find the principles contained in debt collection cases to be instructive on the case before us.

---

[5] All references to RSMo. (2016) unless otherwise indicated.

When a party asserts the right to enforce an arbitration agreement or collect a debt through a succession of assignment of rights, "proof of an assignment of the account is essential to recovery." *LVNV Funding, LLC v. Mavaega*, 527 S.W.3d 128, 141 (Mo. App. W.D. 2017) (quoting *CACH, LLC v. Askew*, 358 S.W.3d 58, 62 (Mo. banc 2012)). "The party must show clearly through a valid assignment it is the rightful owner of the account at issue." *Id.* (quoting *CACH, LLC*, 358 S.W.3d at 62).

"If there are multiple assignments, the [moving party] must prove 'the validity of assignment every time the rights to collect the debt are transferred.'" *Id.* All links in the chain between the original parties to the arbitration agreement and the party seeking to compel arbitration must be proven by competent evidence to demonstrate a party's standing to enforce the debt or arbitration rights. *Id.* Only if a subsequent third party is found to have been validly assigned the rights of the original party to an arbitration agreement will that party be entitled to enforce the terms in the original agreement. *Boulds v. Chase Auto Finance Corp.*, 266 S.W.3d 847, 852 (Mo. App. E.D. 2008).

A.    *Relevant Business Records*

Business records are commonly used as evidence in order to establish a valid assignment of contractual rights. Such records can be used to show an assignment of rights from one party to another, as well as the scope of the rights that were assigned. Business records, like all sources of competent evidence, must meet proper foundational requirements and overcome any substantive objections, such as hearsay. Evidence must also be logically and legally relevant in order to be admissible. *Hollis by and Through Hollis v. Poplar Bluff Reg'l Med. Ctr., LLC*, 674 S.W.3d 76, 93 (Mo. App. E.D. 2023) (citing *Nolte v. Ford Motor Co.*, 458 S.W.3d 368, 382 (Mo. App. W.D. 2014)). It is the probative weight of legally relevant evidence that helps to advance

8

or impede a particular legal contention. *Consolidated School Dist. No. 2 v. King by Dresselhaus*, 786 S.W.2d 217, 219 (Mo. App. W.D. 1990) (internal citation omitted). Business records can be admitted via affidavit as an exception to the hearsay rule, and together, Missouri revised statutes §§ 490.680 and 490.692 provide a "practical way" to accomplish this. *Portfolio Recovery Assocs., LLC v. Schultz*, 449 S.W.3d 427, 432 (Mo. App. E.D. 2014) (quoting *C & W Asset Acquisition*, 136 S.W.3d at 138)).

1.      *Relevancy prerequisite for admission of business records pursuant to §490.680*

First, we examine § 490.680, this statute allows relevant business records, that are properly recorded and maintained, to be admitted upon the testimony of a qualified witness if, in the opinion of the court, the source of the information is competent. The statute sets forth the following foundational requirements for a document to be admitted under the business-records exception to the hearsay rule:

> A record of an act, condition or event, shall, ***insofar as relevant***, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

§ 490.680 (emphasis added).

The statute makes clear that competent evidence is prefaced by the relevance of the evidence, and the circuit court is required to make a reliability determination pertaining to the source of the records and the method and time of preparation of the documents. § 490.680; *Discover Bank v. Smith*, 326 S.W.3d 120, 123 (Mo. App. S.D. 2010) (quoting *Davolt v. Highland*, 119 S.W.3d 118, 134 (Mo. App. W.D. 2003) ("When the [aforementioned] enumerated statutory requirements are met, 'the statute invests the record with a presumptive

9

verity, and so excepts them from the hearsay rule.'")). Section 490.680's introductory clause, "insofar as relevant," must be satisfied before the competency of the testimony is determined. *See* § 490.680; *see also Discover Bank*, 326 S.W.3d at 123 (quoting *Davolt*, 119 S.W.3d at 134). A foundation of relevance is required because records themselves do "not make relevant that which is not otherwise relevant, nor make all business and professional records competent evidence regardless of by whom, in what manner, or for what purpose they were compiled or offered." *Tile-Craft Products Co., Inc. v. Colonial Properties*, 498 S.W.2d 547, 549 (Mo. 1973) (citing *Kitchen v. Wilson*, 335 S.W.2d 38, 43 (Mo. 1960)). Only after the relevance of the evidence and the competency of the evidence are ascertained will the court apply the veracity presumption and exercise its discretion to accord evidentiary weight. *Discover Bank*, 326 S.W.3d at 123 (internal quotation omitted); *see also Portfolio Recovery Assocs., LLC*, 449 S.W.3d at 432 (citing *C. & W. Asset Acquisition*, 136 S.W.3d at 138).

Indeed, a circuit court is entitled to admit business records at its discretion, weighing the trustworthiness of the records. *Portfolio Recovery Assocs., LLC*, 449 S.W.3d at 432 (quoting *C. & W. Asset Acquisition*, 136 S.W.3d at 138). "Weight of the evidence refers to weight in probative value, not quantity or the amount of evidence." *Houston v. Crider*, 317 S.W.3d, 178, 186 (Mo. App. S.D. 2010) (quoting *Gifford v. Geosling*, 951 S.W.2d 641, 643 (Mo. App. W.D. 1997) (noting further "[t]he weight of the evidence is not determined by mathematics, but on its effect in inducing belief")).

### 2. *Custodian of Records Affidavit pursuant to § 490.692*

Secondly, § 490.692 allows for the admission of business records that have met the prerequisites of § 490.680 via affidavit by a competent custodian of records in lieu of personal testimony. The statute sets forth the following:

10

> Any records or copies of records. . . that would be admissible under sections 490.660 to 490.690 shall be admissible as a business record, **subject to other substantive or procedural objections**, in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of sections 490.660 to 490.690, that the **records attached to the affidavit were kept as required by section 490.680.**

§ 490.692 (emphasis added).

A party may certainly offer business records as evidence either by affidavit or live testimony. Similarly, a trial court is vested with great discretion when assessing the credibility and admissibility of such evidence whether offered by a live witness or through an affidavit. When assessing the testimony within an affidavit, the circuit court "in exercising its fact-finding function, [is] free to consider, evaluate, and determine the credibility of a [party]'s evidence, **in whatever form offered and admitted,** and this court defers to that function and those determinations." *Symington v. State*, 638 S.W.3d 596, 599 (Mo. App. W.D. 2021) (quoting *Durst v. State*, 584 S.W.3d 817, 821 (Mo. App. S.D. 2019)). Deference is extended to the circuit court even where the testimony is only provided by a "cold record." *Durst*, 584 S.W.3d at 821 (finding that the circuit court did not abuse its discretion in judging the credibility of a witness based only on deposition testimony and thus denying postconviction relief).

When submitting business records via affidavit, the documents themselves must adhere to evidentiary rules, including relevancy, authentication, hearsay, and the best evidence rule. *CACH, LLC*, 358 S.W.3d at 63 (citing *Hadlock v. Dir. Of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993)). "Legal conclusions are not admissible facts." *Gemini Cap. Grp. LLC v. Tripp*, 445 S.W.3d 583, 588 (Mo. App. S.D. 2013) (quoting *Scott v. Ranch Roy-L Inc.*, 182 S.W.3d 627, 635 (Mo. App. E.D. 2005)). Thus, "the proper function of an affidavit is to state facts, not conclusions." *Id.* (quoting *Bakewell v. Mo. State Emps.' Ret. Sys.*, 668 S.W.2d 224, 227 (Mo. App. W.D. 1984)).

The affiant must be a qualified witness, and the form and substance of the affidavit must also be competent in order to satisfy the requirements of § 490.680. The party seeking to prove a valid assignment though business records also bears the burden of providing the court with a qualified affiant that serves more purpose than merely serving as a "conduit to the flow of records" between the original party to the contact and a successor assignee. § 490.680; *CACH, LLC*, 358 S.W.3d at 63. Specifically, the qualified witness must ***authenticate*** the attached to the § 490.692-compliant affidavit by identifying the affiant, identifying the attached documents, and attesting that the records attached to the affidavit were kept as required by § 490.680 and were relevant in their own right. *See Portfolio Recovery Assocs., LLC*, 449 S.W.3d at 432 (citing § 490.692 (noting "Section 490.692 does not require the attachments to a business record affidavit to be listed [within the affidavit]")); *see also Discover Bank*, 326 S.W.3d at 123.

Applying the relevant statues, "[t]he qualification of records within the business records exception to the hearsay rule requires testimony as to the mode of preparation of the record and that it was made at or near the time of the act, condition or event it purports to show." *Asset Acceptance v. Lodge*, 325 S.W.3d 525, 528 (Mo. App. E.D. 2010) (internal citation omitted). "A witness is qualified to testify regarding a business record if he or she has sufficient knowledge of the business operation and methods of keeping records of the business to give the records probity." *Id.* "While an affidavit need not contain a particular 'magic phrase' in order to establish that it is made on personal knowledge, the averments should still demonstrate that the affiant has personal knowledge of the matters contained in the affidavit." *Gateway Metro Fed. Credit Union v. Jones*, 603 S.W.3d 315, 319 (Mo. App. E.D. 2020) (citing *Scott*, 182 S.W.3d at 635).

12

*i.* *Self-authenticating records under §§ 490.180 and 490.220*

Section 490.180 recognizes self-authenticating business records that bear state certification. The statute states: "[c]opies of all papers on file in the office of the secretary of state, state treasurer, state auditor and register of lands, or of any matter recorded in either of said offices, certified under the seal of the respective offices, shall be evidence in all courts of this state." § 490.180. Similarly, Missouri extends reciprocity to public records from the federal government and other states. § 490.220 ("All records and exemplifications of office books, kept in any public office of the United States, or of a sister state, not appertaining to a court, shall be evidence in this state, if attested by the keeper of said record or books, and the seal of his office, if there be a seal."). Although self-authenticating business records meet these foundational requirements establishing their authenticity, their relevance to the particular legal or factual matter at issue must be made evident in order for them to have any probative value. *See Portfolio Recovery Assocs., LLC*, 449 S.W.3d at 432 (quoting *C & W Asset Acquisition*, 136 S.W.3d at 138). Such legal relevancy may be established through live testimony or a competent affidavit. *See id.* (quoting *C & W Asset Acquisition*, 136 S.W.3d. at 138).

II. *JCAP's proffered evidence is not sufficiently competent to establish the validity of assignment of arbitration rights*

In its Second Order denying JCAP's amended motion to compel arbitration, the circuit court found JCAP had not established by competent evidence the link in the assignment chain from DriveTime/DT Acceptance to Bridgecrest, which thereby invalidated the assignment chain. Although the circuit court did not articulate the specific reason or piece of evidence that it found lacked credibility and probative weight, we remain mindful of our standard of review. Consequently, we will affirm the circuit court's judgment on "any grounds supported by the

13

record." *See Bracy*, 684 S.W.3d at 28; *Gemini*, 445 S.W.3d at 588. Here, several compelling grounds support the circuit court's judgment.

A.    *Incompetent custodian of records and insufficient affidavit pursuant to §490.692*

Here, JCAP failed to produce a competent witness to meet the relevancy requirement set forth by § 490.680, such that J.C. did not competently testify to the authenticity of the business records in the Second Affidavit pursuant to § 490.692. *See Portfolio Recovery Assocs., LLC*, 449 S.W.3d at 432. In the Second Affidavit, J.C. offers mere legal conclusions without stating facts sufficient to support her assertions. *See Gemini*, 445 S.W.3d at 588 (quoting *Scott*, 182 S.W.3d at 635) ("Legal conclusions are not admissible facts.").

In *Gemini*, the circuit court was charged with analyzing the competency of a creditor's chain of assignment purporting to entitle the creditor to arbitrate a dispute arising out of a vehicle purchase. *Id.* at 587. *Gemini* upheld the circuit court's determination that the creditor did not prove a valid chain of assignment where the circuit found the supporting business records were accompanied by incompetent affidavits. *Id.* Applying § 490.680, *Gemini* found the affidavits did not provide substantial evidence of the assignments because "they contained only legal conclusions as to the critical facts surrounding the assignment of [the account.]" *Id.* For example, statements that the relevant account had "been assigned" failed to meet the creditor's burden to prove a valid assignment. *Id.* The attached business record print-outs that creditor claimed proved the purported assignment were likewise inadmissible because nothing in the affidavits showed how the records were generated or that they were made in the regular course of business. *Id*. at 589 (citing § 490.680, RSMo. (2000)).

As in *Gemini*, the Second Affidavit insufficiently demonstrates a competent chain of assignment. *See id.* The Second Affidavit states J.C. is employed by "the following related entities: Bridgecrest Acceptance Corporation formerly known as ("f/k/a") DT Acceptance

14

Corporation ("Bridgecrest"); DriveTime Car Sales Company, LLC ("DriveTime Car Sales"); and Bridgecrest Credit Company, LLC f/k/a DT Credit Company, LLC ("Bridgecrest CC")." J.C. attested that the statements contained in the Second Affidavit are based on her personal knowledge and her "review of business records" kept by the above entities. When outlining her involvement in the preparation of the attached business records, she attests that she has "custody and access to Drivetime's business records" and is familiar with the mode of preparation of Drivetime's business records. Critically, however, J.C. states she is only "authorized to speak on **Drivetime's** behalf." (emphasis added). J.C.'s affidavit is silent on the corresponding foundation for Bridgecrest apart from asserting it is a "related" or "affiliated" entity. In analyzing the relevance of a purported "affiliated entity," the circuit court—and by extension this Court— cannot assume the relevance of a document or fill in an evidentiary gap, such as by improperly assuming the relevance of JCAP's business records. *See Portfolio Recovery Assocs., LLC.*, 449 S.W.3d at 433; *Gemini*, 445 S.W.3d at 588 (citing *Bakewell*, 668 S.W.2d at 227). In assessing the circuit court's judgment on evidentiary matters, "appellate courts view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations." *Ivie*, 439 S.W.3d at 200. It is within the discretion of the trial court to believe or disbelieve the evidence before it, irrespective of the volume. *Wildflower Cmty. Ass'n Inc. v. Rinderknecht*, 25 S.W.3d 530, 536 (Mo. App. W.D. 2000). A careful review of the record shows the Second Affidavit therefore fails to establish the relevance of the documents it purports to authenticate as required by § 490.680. *See Gemini*, 445 S.W.3d at 587.

　　*Portfolio Recovery Assocs., LLC* provides a legally analogous albeit factually distinguishable case to the one at bar. 443 S.W.3d at 433. Comparing the competent affidavit there to the Second Affidavit here, it is plain the Second Affidavit falls short of the competency

15

standard. *See id.* In that case, where a creditor sought to enforce the collection of the debt, the affiant testified that she was employed by the creditor, had personal knowledge of the business records of that creditor, and was "a qualified person authorized to swear and declare on behalf of [the creditor.]" *Id.* She then proceeded to testify that the business records were generated by the creditor as a regular practice by a person with knowledge of such matters. *Id.* at 433. Separate from the affidavit, the creditor laid a foundation for the business records it sought admitted into the record by adducing evidence, both via affidavit and live testimony, demonstrating the *relevance* of those records. *Id.* at 434. Because the creditor established the necessary relevancy, this Court found the affidavit sufficient on appeal. *Id.* Unlike the affiant in *Portfolio Recovery Assocs., LLC*, however, J.C. does not explain any continuity of the business-records retention schedule or its process for when DriveTime purportedly became Bridgecrest. *See id.* This is a critical distinction, as commonsense instructs that any change of name or sale of company may result in a number of changes in business-record keeping procedures. JCAP provided no explanation via affidavit or by live testimony to lay that foundation, which is fatal to its claim. *See id.*

The Second Affidavit exhibits additional deficiencies related to the confusion between the various business entities referenced by J.C. as discussed in *CACH, LLC*. 358 S.W.3d at 62–63. In that debt collection action brought by a creditor, the affiant-custodian worked for the parent company of the creditor rather than for the creditor itself. *Id.* The Supreme Court found the custodian could not properly attest to the business operations of the creditor merely by virtue of being employed by the creditor's parent company. *Id.* Indeed, a document prepared by one business "cannot qualify for the business records exception merely based on another business's records custodian testifying that it appears in the files of the business that did not create the

16

record." *Id*. (internal citations omitted). The Supreme Court analogized the facts of *CACH LLC* to those in *Asset Acceptance*, wherein the creditor's legal director failed to lay a foundation for an assignment chain and authenticating bill of sale from a consumer lending company because the affiant was unqualified to "specifically testify to the mode of the documents preparation or the time of their preparation." *Id*. at 63–64 (citing *Asset Acceptance*, 325 S.W.3d at 528). Ultimately, the Supreme Court held that all requirements of § 490.680 must be satisfied in order for a debt collector's affiant to lay a foundation for documents purporting to show a valid assignment of rights. *Id*. at 62 (internal citation omitted).

Like the deficient affidavit at issue in *CACH, LLC*, the Second Affidavit improperly attempts to lay the foundation for the business records of one company (Bridgecrest) despite its affiant, J.C., being authorized to speak only for (Drivetime). *See id.* at 62–63. Having failed to explain with any degree of specificity the relationship amongst the various entities referenced in the Second Affidavit, J.C. is not a qualified affiant. *See id.* Also, as previously explained, J.C.'s affidavit fails to attest to any record-keeping procedures that were retained or changed when Drivetime became DT Acceptance, which then purportedly became Bridgecrest. *See Gemini*, 445 S.W.3d at 587. J.C. merely provides conclusory statements that these "related entities" are related, while failing to provide logical connections for the court that both companies exerted control over the records other than that the records appeared in both files of both corporations. *See id.*; *see also CACH LLC*, 358 S.W.3d at 62 (internal citations omitted). Such conclusory statements fail to meet the function of an affidavit. *Gemini*, 445 S.W.3d at 588 (citing *Scott*, 182 S.W.3d at 635; *Bakewell*, 668 S.W.2d at 227). Applying *CACH LLC* and *Gemini* here, J.C. cannot act as the sole conduit, providing mere conclusory statements that, because DriveTime held these records, Bridgecrest necessarily now holds these records. *See CACH LLC*, 358

S.W.3d at 62; *Gemini*, 445 S.W.3d at 588. Thus, the Second Affidavit does not establish a valid chain of assignment. *See CACH LLC*, 358 S.W.3d at 62.

B. *Failure to establish the relevance of self-authenticating records admitted pursuant to §§ 490.180 and 490.220*

We further note that the Second Affidavit does not identify all of the business records it purports to authenticate, which undermines the Second Affidavit's attempt to provide appropriate context and relevance for the purported valid chain of assignment. *See* § 490.680; *Gemini*, 445 S.W.3d at 588–89. For instance, the Second Affidavit only generally alludes to, without naming or explaining, the attached exhibit of the Arizona Secretary of State's certified recognition of DT Acceptance's name change to Bridgecrest. The Second Affidavit does not refer whatsoever to the Missouri Secretary of State's certified recognition of the same name change, which JCAP attached separately to its amended motion to compel arbitration. Even though the parties agree that the Missouri certified record is self-authenticating under § 490.180, and we note the Arizona certified record would be self-authenticating under § 490.220, JCAP still carries the burden to demonstrate the ***relevance*** of those records to its assignment chain, which JCAP could have accomplished through the Second Affidavit. *See C & W Asset Acquisition*, 136 S.W.3d at 138.

Although state records recognizing the name change from DT Acceptance to Bridgecrest were self-authenticating, the circuit court nevertheless was entitled to find that the affidavit and attached records were not competent evidence of the assignment. Not only must the evidence sustain a basic relevancy challenge, "a [circuit] court is afforded broad discretion in determining whether the parties complied with section 490.680." *Discover Bank*, 326 S.W.3d at 123. Therefore, "[t]he [circuit] court's decision whether to admit the business records remains a discretionary determination of the trustworthiness of the records." *See Portfolio Recovery Assocs., LLC*, 449 S.W.3d at 432 (quoting *C. & W. Asset Acquisition*, 136 S.W.3d at 138).

18

Despite the records having been admitted as evidence, as was the case here, how much persuasive value that evidence has on the issue the trier-of-fact must decide will rarely be disturbed on appeal, as the circuit court is entitled to disbelieve the evidence of the party bearing the burden of proof. *See Interest of A.M.R. v. J.M.*, 673 S.W.3d 864, 874 (Mo. App. W.D. 2023) (citing *Maly Com. Realty Inc. v. Maher*, 582 S.W.3d 905, 911 (Mo. App. W.D. 2019)).

Turning to the attached documents themselves, while § 490.692 does not specifically require an affidavit list all of the attached business records, *Portfolio Recovery Assocs., LLC*, 449 S.W.3d at 432, the failure to list them may contribute to a finding that the affidavit and its attached business records are otherwise deficient or simply unpersuasive. *CACH, LLC*, 358 S.W.3d at 63 (citing *Hadlock*, 860 S.W.2d at 337) (noting even authenticated business records must be shown to be ***relevant*** to be admissible)). This foundational relevance analysis applies even in light of documents that—if the proper foundation is laid—are self-authenticating. *See Tile-Craft Products Co., Inc.*, 498 S.W.2d at 549 (citing *Kitchen*, 335 S.W.2d at 43); *see also Discover Bank*, 326 S.W.3d at 123. Competent evidence is defined as "relevant and admissible evidence that can establish the fact at issue." *Consolidated School Dist. No. 2*, 786 S.W.2d at 219 (internal citation omitted).

In failing to demonstrate its right to compel arbitration to the circuit court by laying a competent foundation for its business records, JCAP essentially asked the circuit court to assume the relevance of those records, thereby failing to satisfy the first clause of § 490.680. As previously noted, JCAP's Second Affidavit did not meet § 490.680's "insofar as relevant" prerequisite so as to grant the hearsay business records "presumptive verity." *See Discover Bank*, 326 S.W.3d at 123 (quoting *Davolt*, 119 S.W.3d at 134). JCAP asked the circuit court to assume that DT Acceptance and Bridgecrest are the same entity, operating under the same record

19

keeping procedures, and doing the same business, and that the only change was the name of the entity. Yet it is not the function of the circuit court to supply missing evidence not presented by the parties. *See Brock v. Dunne*, 637 S.W.3d 22, 27 (Mo. banc 2021). Nor may we as the appellate court act as a party's advocate. *See Summers v. Dept. of Corr., Emp., and Div. of Emp. Sec.*, 689 S.W.3d 573, 576 (Mo. App. W.D. 2024) (internal quotation omitted) ("It is not the role of an appellate court to serve as an advocate for a litigant, and it has no duty search the transcript or record to discover the facts that substantiate a point on appeal."). In order to comply with § 490.680, JCAP needed to provide the court with both relevant and competent testimony by a qualified witness, and the circuit court did not abuse its discretion in finding that JCAP did not carry its burden. *See Discover Bank*, 326 S.W.3d at 123; *Bracy*, 684 S.W.3d at 28.

III.    *JCAP's amended motion to compel was not precluded by the law of the case doctrine*

We now turn to Rice's contention that this appeal is not properly before us because JCAP's filing of an amended motion to compel arbitration was prohibited by the law-of-the-case doctrine. We disagree. "The doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal." *Nance v. Maxon Elec., Inc.*, 425 S.W.3d 926, 930 (Mo. App. W.D. 2014) (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 632 (Mo. banc 2013)).

Specifically, Rice contends that JCAP was precluded from filing an amended motion because it had already litigated the denial of the first motion to compel both in the circuit court and on interlocutory appeal. However, Rice neglects the basic principle that two types of remand exist on appeal: (1) general, meaning that all issues are open to consideration and a new trial because no specific direction was given and (2) specific, meaning the circuit court is instructed to enter a judgment in conformity with the mandate. *See Dubuc v. Treasurer of State*, 659 S.W.3d 596, 601 (Mo. banc 2023).

20

When a mandate contains specific instruction, the circuit court has no authority to deviate. *Id.* The same is not true on general remand. *Id.* Here, this Court did not issue a specific remand with instructions to the circuit court to follow the appellate court's mandate, thus it was a general remand. *See id.* Following a general remand, if the issues are "substantially different" from those at the center of the original appeal, then applying the law-of-the-case doctrine is inappropriate. *In re Estate of Corbin*, 166 S.W.3d 102, 106 (Mo. App. W.D. 2005) (quoting *State ex rel. Alma Telephone Co. v. Public Service Com'n*, 40 S.W.3d 381, 388 (Mo. App. W.D. 2001)). In the instant case, the issues and supporting evidence is now substantially different to those in the original appeal due to the filing of the Second Affidavit and the additional evidence it purported to authenticate, hence applying the law-of-the-case doctrine would be not be appropriate. *See id.*

Further, we find that amended motions have been historically permissible in other procedural contexts after the first motion has been denied. Missouri courts have permitted parties to file amended motions for summary judgment on expanded records after the first motion for summary judgment on the same issue has been denied. *Cross v. Drury Inns, Inc.*, 32 S.W.3d 632, 636 (Mo. App. E.D. 2000). We are persuaded the same reasoning applies to amended motions to compel arbitration. "When a movant needs to supplement the motion with new facts, the movant should withdraw the original motion and file a new or amended motion incorporating the additional evidence." *Id.* (citing *New Prime, Inc v. Professional Logistics Management Co., Inc.*, 28 S.W.3d 898, 904 n.4 (Mo. App. S.D. 2000)).

Here, JCAP could not withdraw its first motion to compel arbitration because the circuit court already ruled on it and, further, this Court affirmed that denial on appeal. After the circuit

21

court received a general remand, JCAP permissibly filed a second motion to compel arbitration based on an expanded record.  *See id.*

IV.     *Rice's Motion for damages under Rule 84.19*

Finally, we consider Rice's motion for damages pursuant to Rule 84.19, which allows us to award damages to the respondent as we "deem just and proper."  Rule 84.19.  "Pursuant to Rule 84.19, if we determine that an appeal is frivolous, we may award monetary damages to the respondent as we deem just and proper." *Est. of Downs v. Bugg*, 242 S.W.3d 729, 734 (Mo. App. W.D. 2007) (citing Rule 84.19)).  "An appeal is frivolous if it presents no justiciable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect that it can ever succeed." *Id.* (quoting *Bugg*, 242 S.W.3d at 734).

"We award damages under Rule 84.19 cautiously on a case-by-case basis where doing so will serve '(1) to prevent congestion of the appellate court dockets with meritless cases which, by their presence, contribute to delaying resolution of meritorious cases and (2) to compensate respondents for the expenses they incur in the course of defending these meritless appeals.'" *Id.* (quoting *Bugg*, 242 S.W.3d at 734).

The crux of Rice's argument is that JCAP's appeal was frivolous, vexatious, and inflicted damages on Rice because it is, in Rice's view, a duplicative appeal, precluded by the doctrine of law of the case.  As demonstrated by our previous analysis, JCAP's appeal was not frivolous as JCAP was not precluded in amending its motion to compel arbitration and add additional evidence.  *See Cross*, 32 S.W.3d at 632; *see also In re Estate of Corbin*, 166 S.W.3d at 106.

We hereby deny Rice's motion.

## Conclusion

Our careful review of the record indicates that JCAP's Second Affidavit was not competent evidence to support the chain of alleged assignments of arbitration rights from

22

DriveTime to JCAP.  Furthermore, the record indicates that the self-authenticating documents, pertaining to DT Acceptance's name change, did not include the necessary context to satisfy § 490.680.  Therefore, in the absence of competent evidence of the assignment chain, we must uphold the circuit court's denial of JCAP's amended motion to compel arbitration.  The order of the circuit court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Thomas C. Clark, II., C.J., and
Thomas C. Albus, Sp. J., concur